RACHEL BORST, by her next friend, *vs.* COREY and BORST.

A mere recital never concludes a party. There must be a direct affirmation. And a recital by A. and B. will not estop, or furnish evidence against C., even though the latter be a party to the instrument containing the recital; provided the recital does not purport to be of any fact within his knowledge, but relates to transactions between the other parties.

A settlement made by a husband upon his wife, after marriage, in pursuance of a parol agreement entered into before marriage, is not valid. And if such settlement be made by a husband indebted at the time, it is fraudulent and void against all such antecedent creditors.

Where C. was trustee for a married woman, under a post-nuptial agreement entered into between her and her husband, and was also one of the assignees of the husband in an assignment made for the benefit of his creditors, and property came to his hands in the latter character; *Held* that he was bound to apply the property as the law would apply it, rather than to the payment of a bond and warrant of attorney given by the husband in trust for his wife, and that even if he had notice of an ante-nuptial agreement between the husband and wife, in respect to her separate estate, he was not concluded by such notice, from contesting the legality of the agreement, nor from disregarding it, so far as it conflicted with the rights of the husband's creditors.

IN EQUITY. This suit was commenced in the late court of chancery, before the vice chancellor of the fourth circuit, by bill filed in June, 1846, in behalf of the complainant as the then late widow of James Halladay, deceased, and the wife of Martin I. Borst, one of the defendants. The object of the bill was to compel the defendant Corey, as the trustee of the complainant, and as one of the assignees of her husband, Martin I. Borst, to render an account as such trustee and assignee, and to pay to the complainant whatever he had received, either as such trustee or assignee. The cause being at issue on bill, answer and replication, was on motion of the complainant's solicitor, referred by an order of this court dated August 22, 1848, to three referees, for hearing and decision. The referees, having heard the testimony produced by the respective parties, made their report in writing, by which they found due from the defendant Corey to the plaintiff, the sum of $2107,92, and directed that the defendant should pay the costs of the suit, to be taxed. The defendant Corey excepted to the report, and moved that the same should be set aside.

Borst *v.* Corey.

*J. L. Curtenius,* for the plaintiff.

*D. P. Corey,* defendant, in person.

*By the Court,* WILLARD, P. J. In December, 1836, the complainant, being the widow of James Halladay deceased, intermarried with Martin I. Borst. The bill alleged that prior to the marriage a parol agreement was entered into between the complainant and her intended husband, that the sum of $1300, to which she was entitled from the estate of her former husband, should be secured to her separate use, in the manner therein stated; and that afterwards, on the 10th April, 1838, in pursuance of said agreement, an instrument in writing was made and executed by and between said Martin of the first part, the complainant of the second part, and the defendant David P. Corey of the third part, under their respective hands and seals, whereby a bond and warrant of attorney executed by the said Martin for the payment of $1300 was made payable to said Corey and delivered to him in trust for the complainant. This instrument contained a recital that this $1300 was the gross amount of the complainant's right of dower in the real estate of her former husband, and the said Martin admitted that he had received the same, and in consideration thereof executed and delivered to Corey the said bond and warrant of attorney. The bill was drawn with a double aspect; 1st, charging that Corey might have collected the same from the said Borst, but had lost it through inattention; and 2d, that he had actually received the amount in full, through an assignment made by said Martin on the 28th November, 1839, to said Corey, Samuel Newkirk and Joseph I. Borst, in trust for the payment of the debts of the said Martin, in certain classes therein specified, in which assignment the bond and warrant of attorney, together with sundry other debts of the said Martin, was put in the first class. The object of the bill was to call Corey to account and require him to pay over said fund with interest.

An answer under oath was waived, but the defendant put in an answer denying the ante-nuptial agreement, and denying the

receipt of the money under the trust deed ; and alleging that the funds he did receive under the assignment were applied to the payment of the debts of the said Martin, and insisting that the post-nuptial bond and warrant of attorney were void as against the creditors of the said Martin, he being insolvent at the time it was entered into.

On the hearing before the referees there was no evidence of the antenuptial agreement, but the recital in the instrument before mentioned executed by the complainant of the first part, the said Martin of the second part and the said Corey of the third part. That recital was in these words : " Whereas, a marriage has lately been solemnized between said Martin and Rachel, and it having been agreed before said marriage, *between the said parties thereto*, that the sum of thirteen hundred dollars, the gross amount of the said Rachel's right of dower, in the real estate of her said former husband, now deceased, shall be secured to her separate use in the manner hereinafter mentioned," &c. This recital does not purport to be of any fact within the knowledge of the said Corey, nor does he affirm the truth of it in any respect. It is language applicable only to the other two parties, and is probably obligatory upon them. So far from being an estoppel, the recital is not even evidence as against Corey, of the fact therein recited. It is no more evidence against him than the declaration of the complainant and Borst which, as to Corey, are clearly hearsay. A mere recital never concludes a party. There must be a direct affirmation. (*Co. Lyt.* 352, *b.*) And a recital by A. and B. can never furnish evidence against C. It is never evidence against strangers. (*Cowen & H. Notes*, 1235, *and cases cited.*) There being no evidence of an ante-nuptial agreement, Corey had a right under the assignment of Borst for the benefit of creditors, to apply the funds to the payment of Borst's honest debts, rather than to apply them to a bond and warrant of attorney, given in trust for his wife.

But if I am wrong in the above view of the case, there is another aspect in which it can be presented, equally adverse to the complainant. The referees expressly found that Corey was

guilty of no neglect or laches, in omitting to collect the bond and warrant of attorney. This disposes of the case in the first aspect. The complainant was bound to show that Corey had received funds belonging to Borst which he was bound to apply on the judgment in his favor as trustee for her, in preference to the other debts which Borst owed at the time of his assignment. Corey acted in two capacities. He was trustee for Mrs. Borst under the post-nuptial agreement, and was also one of the assignees of Borst in the assignment made for the benefit of creditors, and it was in this latter character that the property came to his hands. He was bound to apply the property as the law would apply it. If the recital in the post-nuptial agreement afforded evidence against Corey of the existence of an antenuptial agreement, it did not conclude him from contesting the legality of the agreement, nor from disregarding it, so far as it conflicted with the rights of Borst's creditors. It was open to Corey as a creditor, and as a representative and trustee for all the other creditors of Borst, to question the arrangement made between Borst and his wife, in the same manner, as if he had not been a trustee for the complainant.

This then brings us to the question, whether the ante-nuptial parol agreement made between Borst and his wife and carried out by the post-nuptial instrument two years afterwards, in which Corey was trustee, is valid as against the creditors of Borst. It is quite clear that Borst was utterly insolvent at the time he made the verbal ante-nuptial agreement, and continually afterwards. On this point there was not room for two opinions. It is equally clear that the debts of Borst, provided for in the first class, were sufficient to exhaust the whole property, independently of the bond and warrant of attorney, given by him to Corey for his wife. In no aspect, then, can the complainant maintain this action, unless her claim is either superior, or at least equal, to that of the other creditors of Borst.

It is established by authority that a settlement after marriage, in pursuance of a parol agreement entered into before marriage, is not valid. And if such settlement be made by a hus-

band indebted at the time, it is fraudulent and void against all such antecedent creditors. (*Read* v. *Livingston,* 3 *John. Ch.* 481. 2 *Kent's Com.* 440, 441, *and note, where all the principal cases are collected.*) The demands of justice are superior to the claims of affection. Borst was under no legal or moral obligation to make the settlement. The property received by him in right of his wife became his, absolutely, and his creditors at once had a stronger claim to it, than any other person who is a mere volunteer.

The referees should therefore, have dismissed the bill with costs. It was not essential for the defense of the defendant, that the debts which he paid should have passed into judgment. He could not, indeed, maintain a creditor's bill as a mere creditor at large. But when he is assailed by a party claiming an interest in the fund in his hands, it is enough for him to show that he has applied it to the creditors entitled to it, whether they be creditors by judgment or creditors at large.

But if I am wrong in both the foregoing positions, I think the referees erred in the mode in which they stated the account. On this point, as a question of fact, we should speak with diffidence, as we differ from the referees, who heard the evidence. The cause must have been very badly tried, or the testimony very defectively reported. There is strong reason to believe from the testimony of Abram Shuler the principal clerk, that the whole of Exhibit No. 3, is embraced in Exhibit No. 27. If this be so, as the referees give Corey credit for actual payments to the amount of $3686.96, there remained nothing in his hands applicable to the plaintiff's demand. It is astonishing that the accounts should have been kept so loosely, or the witness examined so badly, that the actual amount of the proceeds of the assigned property cannot be ascertained. It is probable that the referees held the defendant responsible for the looseness of his accounts. They were right in holding him to a strict accountability, if he was liable at all. I should be inclined to send the cause back to the referees, if the case turned on this point, to ascertain by the inspection of the books on the exam-

ination of the clerk, whether those two schedules embrace the same account, or any part of the same account.

On the whole the report must be set aside, and the bill dismissed with costs.

Decree accordingly.

[SCHENECTADY GENERAL TERM, January 3, 1853. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]