### CARPENTER *v.* COMMINGS.

### SAME *v.* CARPENTER *et al.*

(*Supreme Court, General Term, Fourth Department.* January 19, 1889.)

1. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—EVIDENCE.

On the question of an alleged antenuptial agreement between plaintiff and decedent that the survivor should take no interest in the property of the other, there was testimony of declarations by plaintiff, which she denied, that neither of them was to have any interest in the property of the other; one witness, 75 years old, testifying to such a declaration before marriage. Decedent's estate amounted to $25,000, while plaintiff had $1,400. Decedent at the time of the marriage was 65 years of age, and plaintiff was considerably younger. The marriage was opposed by his children by a former wife, one of whom came from a distant state because of such opposition, and soon after, and three days before the marriage, he and a son-in-law of decedent accompanied the latter to an attorney's office, where decedent executed deeds of all his realty to his children, antedating them to a time before the agreement of marriage, and giving them to the son-in-law, to be delivered after his death. Plaintiff was ignorant of the execution of the deeds, no mention being made thereof until decedent's death, 10 years later, decedent remaining in possession. *Held,* that the alleged agreement was not established.[1]

2. SAME—STATUTE OF FRAUDS.

The alleged agreement being in consideration of marriage, and resting in parol, would be void under the statute of frauds. 3 Rev. St. N. Y. p. 2327, § 2, subd. 3.[1]

3. SAME—CONVEYANCE IN VIEW OF MARRIAGE.

It sufficiently appears that the deeds were executed with a view of defeating any right of plaintiff in the lands, and as to her were void.[1]

Appeal from judgments on report of referee.

Two actions by Catharine T. Carpenter, widow of John D. Carpenter, deceased, against Ellen C. Commings and against Albert C. Carpenter and others, to set aside certain conveyances executed by John D. Carpenter as in fraud of the dower rights of plaintiff. Complaints dismissed, and plaintiff appeals.

Argued before FOLLETT, P. J., and KENNEDY and MARTIN, JJ.

*M. N. Thompkins,* for appellant. *Simeon Smith,* for respondents.

KENNEDY, J. John D. Carpenter, in October, 1877, was a widower, living in Ithaca, and then about 65 years of age. He had three children, viz.: Ellen C. Commings, the defendant in the first entitled action; Albert C. Carpenter, one of the defendants in the second action; and one Amanda C. Morgan. At the same time he was the owner in fee of the real estate described

---

[1] See note at end of case.

in the respective complaints. The plaintiff, Catharine T. Carpenter, was then a widow, also living in Ithaca. She had one child,—a daughter. She was considerably younger than John D. Some time in October, 1877, as the referee has found, she and the said John D. entered into an agreement for marriage between them. This was in opposition to the wishes of his said children. On the 22d day of November, 1877, the marriage was consummated, and they commenced to live together as husband and wife, and continued to do so (happy in their married relations) down to the 30th day of March, 1887, when the husband died intestate, leaving the plaintiff, his widow, and said children, surviving him. Their married life was spent in the house of the deceased, it being one of the parcels of land in question, and in which he died. Before and at the time of making the contract of marriage and the time of its consummation, the plaintiff knew he was the owner of the lands in question. In 1877, the son, Albert, lived in Michigan. He came to Ithaca at the request of his sisters, and because of their opposition to the father's said proposed marriage. A few days after he reached there, and on the 19th day of November, he, with John Commings, the husband of Ellen C. Commings, and Carpenter himself, went together to the office of an attorney in Ithaca, and there four deeds were drawn by the attorney and executed by the said John D., and acknowledged by him on that day; by which he conveyed to his children all the real estate which he then owned. These deeds were voluntary, and without any actual consideration. For some reason, unexplained, they were dated back to September 1, 1877, a time anterior to the agreement for marriage. After he had executed and acknowledged these he handed them to Commings, with instructions to deliver them to the respective grantees after his death. Commings took them, put them in an envelope, and placed it in a safe in a private drawer, in the store then occupied by Carpenter and himself in Ithaca. The former had access to the safe. Commings did not look at the envelope until after Carpenter's death, when he found that one of the deeds had disappeared, and the same has never since been accounted for. After the father's death the three deeds were delivered by Commings to said grantees. One conveyed certain premises described in the complaint to Ellen C. Commings, wife of said John; one, certain other premises to the said Albert C. Carpenter; the third conveyed another parcel of land to said Amanda C. Morgan. No satisfactory evidence is given tending to show that at the time of her said marriage the plaintiff had any knowledge of the execution of these deeds, or the attempt of John D. to make said conveyances. These several deeds, at the time of their execution, having been delivered to Commings to be delivered to the respective grantees after the death of the grantor, did not pass immediate title. That remained in the grantor down to the time of his death. Upon their delivery after the happening of that event the title by relation is deemed to have vested as of the time of the first delivery to Commings. *Hathaway* v. *Payne,* 34 N. Y. 92, 113; *Ruggles* v. *Lawson,* 13 Johns. 285; *Jackson* v. *Rowland,* 6 Wend. 669; *Tooley* v. *Dibble,* 2 Hill, 641; *Goodell* v. *Pierce,* Id. 659. Therefore a judgment or other lien against the grantor would have become a lien upon the lands notwithstanding the deed. A widow is entitled to dower in all the real estate owned by her husband during coverture. If, then, the title remained in Carpenter, the husband, may it not be said to follow that, notwithstanding the deeds, undelivered to the grantees during his life, and although upon delivery after his death the title passed by relation, she became entitled to dower, having survived him.

The referee finds "that it was agreed and contracted by and between the said plaintiff and said John D. Carpenter, as a part of the marriage contract between them about to be solemnized, that each of the parties was to have the use and control of the property belonging to each. And that in case of the death of either, the survivor should not take any interest or right in the property of the other." To this finding of fact the plaintiff excepted. As it is

upon this that the order is based directing the judgment dismissing the complaint, it becomes the pivotal point in the case. Let us then first examine the evidence with a view of determining whether that justifies the finding. One Margaret Sanders, a witness called by the defendants, testified: "I remember about Mrs. Carpenter going to choose a dress; that was after Mrs. Commings had left the house, and Mr. and Mrs. Carpenter lived there alone. She said that Mr. Carpenter had told her to pick out the goods what she wanted, and he would pay the bill. She said it was expensive goods; and that she did not have anything to get after Mr. Carpenter's death; and that he would not touch her money if she died first; and what she got she would get during his life-time; that is all I know about it." On her cross-examination she is made to say further: "She said that she and Mr. Carpenter had an agreement that if she died he did not touch her property; and if he died she did not touch his." Sally Minier, another witness called by the defendants, says: "Three or four weeks before her marriage I heard the plaintiff tell her father that she was not to have any of his property, and he was not to have any of hers. All she asked of him was her board, and she would furnish her own clothing. At one time she told me she mistrusted he had deeded his property away; said she had asked him about it, and he did not deny it. This was in November, 1886." Caroline E. Carpenter, wife of the defendant Albert testifies: "She gave me to understand—she spoke of the agreement between herself and father regarding their properties—that she didn't wish him to have any of her property because she wished her daughter to have it after her death, if she died first; and she consented that she should not have his; said this related to real estate, and not to personal property."

The foregoing is all the evidence given tending to show that an antenuptial agreement was made between these parties. I am not satisfied it is sufficient to establish the making of an agreement of the important character of the one in question. The declarations charged to have been made by the plaintiff do not directly refer to any agreement before the marriage, nor can it be fairly inferred that they do. At least they are as susceptible of the construction that they related to some talk had by the plaintiff with her husband after the marriage as before. From the language used it is equally consistent to say, assuming the statements to have been made, that she referred to some post-nuptial understanding or talk had, as to conclude that she spoke of anything that took place before the marriage. It is true, one of the witnesses, Mrs. Minier, an old lady of 77, speaks of a conversation the plaintiff had with her father before her marriage; but that falls far short of establishing an antenuptial agreement of the character claimed by the defendants. The plaintiff denies having made any of the statements above quoted. Antenuptial contracts whereby the intended future wife releases her dower right in real estate of her husband (if it can in any case be established by parol) must be by evidence that leaves no room for doubt as to the making of the same, the circumstances under which it was entered into, and its exact conditions and terms. The relation existing between the intended husband and wife is one of peculiar confidence, and if the husband or those representing him rely upon such an agreement, the burden of proof is upon him or them to show definitely what the same was, and that it was in all respects fairly made, and upon a full understanding by the expected wife of every fact necessary for her to know to enable her to act understandingly, and with full knowledge in the matter. In this case the husband's real estate was of the value of at least $15,000, and his personal property, $10,000. The plaintiff had some $1,400 in her own right. And it seems to us quite improbable that with a full understanding of the situation she entered into an agreement which would deprive her from any participation in this considerable estate, at the same time assuming the burden and responsibility of his care in his old age. Courts require strict proof of fairness when called upon to enforce an ante-

nuptial contract against the wife, and especially when the provisions made for her are inequitable and unjust and disproportionate to the means of the husband, or, as in this case, where no provision is made for her. *Pierce* v. *Pierce*, 71 N. Y. 154; *Kline* v. *Kline*, 57 Pa. St. 120.

The referee finds that the agreement entered into was a part of the marriage contract about to be solemnized between these parties. It is not quite apparent where in the case the evidence is found to sustain the conclusion. But, assuming that it can be supported, then it is an agreement made upon consideration of marriage, and, resting in parol, is void by the statute of frauds. The statute provides "that every agreement, promise, or undertaking made upon consideration of marriage shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith." 3 Rev. St. p. 2327, § 2, subd. 3; *Reade* v. *Livingston*, 3 Johns. Ch. 481; *Borst* v. *Corey*, 16 Barb. 136, affirmed, 15 N. Y. 505; *Dygert* v. *Remerschnider*, 32 N. Y. 629. It cannot be said that either of the parties acquired or lost any rights under or by reason of it, since the only consideration was the proposed marriage, and its subsequent consummation was not sufficient to empower a court of equity to enforce it. The claim by the plaintiff is that the deeds were executed by the future husband, John D. Carpenter, in contemplation of the marriage, and to cut off any interest she, as his wife, might by reason of it acquire in his real estate. It may be contended by the defendants that, although the deeds were not delivered until after the death of Carpenter, that they took effect as of the time they were delivered to Commings, and that the title passed to the grantees at that time; and that, although the alleged antenuptial contract may be void, still its effect may be invoked to rebut the inference of fraud on the part of the grantor. If the conveyances in question were, in fact, made while the marriage was contemplated, and with intent to deprive the prospective wife of her dower right in the lands, then the same are fraudulent and void as to her. *Swaine* v. *Perine*, 5 Johns. Ch. 482; *Youngs* v. *Carter*, 1 Abb. N. C. 136, note; *Smith* v. *Smith*, 6 N. J. Eq. 515; *Petty* v. *Petty*, 4 B. Mon. 215; *Thayer* v. *Thayer*, 14 Vt. 107. The doctrine of these cases is questioned in *Baker* v. *Chase*, 6 Hill, 482; still it seems settled in cases of this character that equity will enforce her rights.

We have referred to the evidence the defendants rely upon to support their theory that such an agreement was made; and it only remains necessary to say that the same is wholly insufficient to establish the fact claimed, or even to raise the presumption of its existence. The manner in which the deeds were executed, the circumstances under which they were made, and the secrecy which surrounded the transaction, furnish strong evidence, not only that no such agreement as is contended was ever made, but that the conveyances were purposely kept secret from the wife, both before and after marriage. When the daughters of the grantor were informed of their father's contemplated marriage they strongly opposed it. This opposition did not seem sufficient to prevent it. The defendant Albert Carpenter, the son, then lived in Michigan. He came to Ithaca at the request of his sisters, and because of his hostility to the father's contemplated marriage. A few days after his arrival, and three days before its consummation, the deeds are executed and delivered to Commings, a son-in-law, to keep until after the grantor's death. He takes them and puts them in a private drawer of a safe, and no mention is made of the fact of their execution by any of the parties having knowledge of it until 10 years after, and after the grantor's death. He in the mean time, and during his life, continued in the possession of the lands as their ostensible owner. Under these circumstances, and in the light of the evidence, it seems to be that the only deduction to be drawn is not only that no previous agreement between the grantor and the plaintiff had been made, but that the conveyances were in fact executed with a view to destroy any right the contem-

plated wife might by the marriage acquire in the lands, and that the same were fraudulently executed as to her. If right in this, it leads to the conclusion that the deeds in question should be set aside, and that the plaintiff, the widow, be adjudged entitled to dower in the lands sought to be conveyed. The conclusion reached renders it unnecessary to examine the several questions raised upon the trial. Judgment reversed, and a new trial ordered before another referee; costs to abide the event. All concur.

NOTE.

HUSBAND AND WIFE—ANTENUPTIAL CONVEYANCES—IN FRAUD OF MARITAL RIGHTS. Upon the death of her husband, a wife has no marital right in lands formerly owned by him, but for which, prior to his marriage with her, he had executed voluntary deeds, and given to a third party, with instructions to deliver them to the grantees therein named, upon the grantor's death, which was done; the wife having had notice, before her marriage, as to what lands the husband owned. Smiley v. Smiley, (Ind.) 16 N. E. Rep. 585. In Jones v. Jones, (Wis.) 25 N. W. Rep. 218, a voluntary deed, made on the day of the grantor's marriage, and only a few hours previous thereto, was held, under the circumstances of the case, to be a fraud on the wife's marital rights, and not to defeat her claim of dower on the death of the husband. A widow's dower is subject to all equities in the land arising out of contracts entered into by the husband before marriage. Beckwith v. Beckwith, (Mich.) 28 N. W. Rep. 116.

In Hamilton v. Smith, (Iowa,) 10 N. W. Rep. 276, the court says: "It has frequently been held that secret and voluntary conveyances, made by a woman in contemplation of marriage, are liable to be set aside, upon the husband's application, as a fraud upon his marital rights. A corresponding rule as to fraud would doubtless apply to a husband, who, before marriage, had made a secret transfer of his property which resulted in an injury to his wife. But it is said that in all such cases the question is as to whether the evidence is sufficient to show fraud. The secrecy of the conveyance would not necessarily show fraud,"—and it is held that where a husband, four days before his marriage, conveys certain land to his children by a former wife, reserving a life-interest in himself, and immediately after his marriage makes a will of other property inferably in favor of the wife, such conveyance will not be held as in fraud of the wife's marital rights. A widow is not entitled to dower in lands conveyed by her deceased husband a few hours before his marriage, without her knowledge, to his son by a former wife, where it appears that he had long before promised the land to the son upon consideration of his working it, and that the son had gone upon the land and made valuable improvements. Champlin v. Champlin, (R. I.) 15 Atl. Rep. 85.

See, also, as to antenuptial conveyances in fraud of marital rights, Fennessey v. Fennessey, (Ky.) 2 S. W. Rep. 158; Green v. Green, (Kan.) 10 Pac. Rep. 156.