ROBINSON & COMPANY *v.* HATHAWAY ET AL.

[No. 18,309.    Filed June 16, 1898.]

150  679
152  542

APPEAL AND ERROR —*Failure to Discuss Error Assigned.—Waiver.*—
The failure of appellant to discuss an error assigned amounts to a
waiver of such error.    *p. 680.*

SPECIAL FINDING.—*Evidence.—Weight Of.*—In determining whether
a special finding is sustained by the evidence the Supreme Court will
consider only such evidence as tends to sustain the finding.    *p. 681.*

PARENT AND CHILD.—*Support of Child.*—Evidence showing that a
boy eleven years of age, his mother being dead, was placed by his
father with a woman, with the request that she care for him until
the father was settled again ; that shortly thereafter the boy inher-
ited an estate from his grandmother, which, when he arrived at
twenty-one years of age amounted to $1,400.00 ; that no agreement
was made with the father to keep the boy, and no pay was
demanded of him; that the father married again, but never called
for the child, shows an indebtedness on the part of the boy sufficient
to support a consideration in a deed of conveyance executed by the
boy, in payment for his support, of real estate worth $1,700.00,
subject to a mortgage of $800.00, where it was further shown that
the boy was supported and cared for until he was twenty-one years
of age, and during such time was sent to school and performed no
services of any value, and the only compensation received for such
support was the real estate conveyed.    *pp. 681-683.*

SAME.—*Emancipation of Child.*—A child may be released from paren-
tal control, by the consent of the parents, or by abandonment and
failure of the parents to support the child, and when thus released,
the child becomes entitled to his earnings, and liable for his neces-
sary support.    *p. 683.*

From the Whitley Circuit Court.    *Affirmed.*

*Thomas R. Marshall, William F. McNagny* and *P.
H. Clugston,* for appellant.

*Andrew A. Adams,* for appellees.

MONKS, J.—Appellant brought this action to set
aside a conveyance of real estate made by appellee,
Hathaway, to his co-appellee, Nancy Graham, as
fraudulent, and subject the same to the payment of
a judgment recovered by appellant against said
Hathaway and others.

The court made a special finding of the facts, and stated a conclusion of law thereon in favor of appellees, and, over appellant's motion for a new trial, rendered judgment against appellant. Appellant filed a motion to modify the judgment, which was overruled.

The assignment of errors calls in question the conclusion of law, the action of the court in overruling the motion for a new trial, and the motion to modify the judgment.

Appellant having failed to discuss the error assigned as to the conclusion of law, the same is waived. *Chicago, etc., R. W. Co.* v. *Hunter*, 128 Ind. 213, 221; *Williams* v. *Potter*, 72 Ind. 355, 357; *Carper* v. *Kitt*, 71 Ind. 24, 26; *Boyd* v. *Fitch*, 71 Ind. 306, 313.

The finding of the court upon the question of consideration is substantially as follows: About the month of February, 1884, appellee, Delmar H. Hathaway, came to the home of appellee, Nancy Graham, and has ever since resided there; they were in no way related to each other, and at the time he was received into her home there was no contract or agreement with reference to the charge to be made for his keeping, and that the services rendered by her in boarding, washing for, mending, making his clothes, and furnishing him with whatever was needful for his comfort and convenience were worth one hundred dollars per year. Soon after he reached the age of twenty-one years he recognized and acknowledged his debt to her. In February, 1894, about the time she commenced to care for said Hathaway, he received an estate from his grandmother which, when he arrived at twenty-one years of age, Feb. 5, 1893, amounted to $1,400.00, which was paid over to him by his guardian James Arnold, on Feb. 10, 1893. On March 23, 1893, he purchased the real estate in controversy, for which he gave his note

for $800.00, secured by a mortgage on the premises, and paid the balance of the purchase money in cash. On November 18, 1895, said appellee Hathaway was justly in debt to said Nancy Graham in the sum of $1,200.00, for care and maintenance for the twelve years immediately preceding said date, and on said day he conveyed the real estate in controversy to her in payment of said indebtedness, she assuming the payment of the mortgage thereon which amounted to about $800.00, and she has paid on said mortgage $210.00; that said real estate was worth at the time of said conveyance $1,700.00, and that the consideration she paid for said real estate was full, valuable and adequate, and said conveyance was not executed or received to defraud appellant, but was made to pay a just debt.

Appellant insists that the said finding as to the consideration for the conveyance of said real estate was not sustained by the evidence, and for that reason the court erred in overruling the motion for a new trial.

In determining whether said finding as to the consideration paid was sustained by the evidence, we can only consider such evidence as tends to sustain the finding, disregarding any evidence to the contrary, for the reason that if there is evidence sustaining the same, even though there may be evidence to the contrary, we can not weigh it, or determine the credibility of the witnesses.

There was evidence, in substance, that when Delmar H. Hathaway was about eleven years old his mother died, and his father William H. Hathaway intending to break up housekeeping, requested Mrs. Graham to keep him a while, until he, the father, was settled again. William H. Hathaway afterwards married, but never came after the boy; there was no agreement with the father to keep the boy, and she never de-

manded any pay from him for keeping him, but expected to demand it of the boy when he was of age. Before Delmar H. Hathaway received the $1,400.00 from his guardian, he spoke to Mrs. Graham about paying her for keeping him, but no amount was mentioned at that time. They talked about the matter at different times, and she wanted her money. A short time before the conveyance was made he agreed to pay her $1,200.00, and told her that he would deed her the land in controversy in payment of his indebtedness to her, and she objected for the reason that it was not enough to pay her, and he said it was the best he could do. On November 18, 1893, he delivered her the deed for the land, which she accepted. The consideration named in the deed was $1,200.00. Said Hathaway lived at the house of Mrs. Graham from the time he went there after his mother's death, until said deed was executed. He was sent to school during his minority, and performed no service of any value for Mrs. Graham. The only compensation she received for keeping and raising him until he was twenty-one, and for his boarding, lodging, washing, mending and making his clothes from the time he was twenty-one until the deed was made, was said real estate.

Appellant insists that the evidence shows that the conveyance was voluntary, and was not based on a valuable consideration, for the reason that the law imposed the duty upon William H. Hathaway to maintain his son Delmar, and as he left his son with Mrs. Graham, the law implied a promise on his part to pay her for her services and expenses in keeping and taking care of Delmar; that the indebtedness to Mrs. Graham was due from the father and not from the son.

We think the evidence authorized the court to find that the father by his failure to look after his son, or take care of him in any way, or to compensate those

who did, had emancipated him from the time he was
received by Mrs. Graham.   A child may be released
from parental control, and become entitled to his earn-
ings, and liable for his necessary support, in which
event, he is said to be emancipated.   Emancipation
may be effected by the consent of the parent, evi-
denced by a written or oral agreement, or from the cir-
cumstances when the parent abandons or fails to sup-
port the child.   Tiffany's Persons and Dom. Rel., p.
260-265; Wood Mast. and Serv., section 25; 14 Am. and
Eng. Ency. of Law, 756-759; *Jenison* v. *Graves*, 2 Blackf.
440, 449, 450; *Hollingsworth* v. *Swedenborg*, 49 Ind.
378, 19 Am. Rep. 678; *Wilson* v. *McMillan*, 62 Ga. 16;
*Hall* v. *Hall*, 44 N. H. 293; *Farrell* v. *Farrell*, 3 Houst.
(Del.) 633.

   In *Hollingsworth* v. *Swedenborg, supra,* this court
quoted with approval from *Farrell* v. *Farrell, supra,*
the following: "And although the general principle is
clear and unquestioned, that the father is entitled to
the services of his minor child, and to all that such
child earns by his labor, yet, it seems equally clear,
that, as the right of the father to the services of the
child is founded upon his duty to support and main-
tain his child, if he should fail, neglect, or refuse to
observe, and perform this duty, his right to the serv-
ices of his child should cease to exist.   And such we
hold is the law."   In this case the father left his minor
son temporarily with a neighbor, but never afterwards
requested his return, or offered to pay for his main-
tenance and support; such conduct on the part of the
father from the time his son was eleven years of age
until he reached twenty-one was sufficient to sustain
a finding that there was an emancipation of the son.
The acts of the parties, Mrs. Graham and the father,
clearly show that it was not the intention that the
father should pay Mrs. Graham, but that it was the

intention that she should look to the estate of the son for compensation.    The son had an estate of his own which he inherited about the time he went to live with Mrs. Graham, and when he became of age, as found by the court, he recognized and acknowledged his indebtedness to Mrs. Graham for his support and maintenance during his infancy.    There can be no question as to his indebtedness to Mrs. Graham for his board, lodging, etc., after he became of age until the deed was made.    The land was only worth $1,700.00, it was subject to a mortgage for $800.00, and was received by Mrs. Graham in payment of an indebtedness of $1,200.00, which was $300.00 more than the value of the land after deducting the mortgage.

We think that there was evidence showing that Delmar H. Hathaway was indebted to Mrs. Graham in the sum of $1,200.00, as found by the court, and that said indebtedness was the consideration for such conveyance.

What we have already said disposes of the question presented by the motion to modify the judgment.    The judgment is affirmed.