# Ft. Wayne & Wabash Valley Traction Company *v.* Crosbie.

[No. 21,018. Filed May 28. 1907. Rehearing denied November 8, 1907.]

1. PLEADING.—*Complaint.—Negligence.—Joint or Several Acts of.— Interurban Railroads.*—A complaint alleging that the defendant interurban railroad company negligently placed an inexperienced motorman in charge of one of its cars and negligently placed such motorman in charge of such car when he was unfit to work on account of overwork, and loss of sleep, to plaintiff's damage, shows two acts of negligence, the proof of either of which entitles plaintiff to a verdict. p. 286.

2. MASTER AND SERVANT.—*Interurban Railroads.—Incompetent Servants.*—An interurban railroad company which knowingly places an incompetent and overworked motorman, who has lost a great deal of sleep, in charge of one of its cars, and he causes a collision which injures another motorman, is liable. p. 287.

3. INTERURBAN RAILROADS.—*Collisions.—Overworked Motormen.— Interrogatories.*—Answers to interrogatories showing that an interurban railroad company knowingly placed an overworked motorman, who had lost a great deal of sleep, in charge of one of its cars, and by reason of such motorman's condition he caused a collision with the rear end of another car stopped to discharge passengers, thereby injuring the motorman of the forward car, do not exonerate the company, though the rear motorman violated the rules in causing such collision. p. 289.

4.  EVIDENCE.— *Admissions.— Interurban Railroads.— Superintend-
ents.*—Admissions, made by an interurban railroad company's
superintendent, when the employes concerned were making their
reports of the accident producing the injuries complained of, that
he, the superintendent, "should have known better than to put" the
motorman, who caused the injury, on the car, are not admissible
as against the company, in an action growing out of such accident.
p. 289.
5.  SAME.—*Incompetent.—Injury.—Presumptions.*—The    admission
of incompetent evidence is presumed to be prejudicial to the ob-
jecting party.  p. 290.

From Clinton Circuit Court;  *Joseph Claybaugh,* Judge.

Action by Mason J. Crosbie against the Ft. Wayne & Wa-
bash Valley Traction Company.  From a judgment for
plaintiff, defendant appeals.  Transferred from Appellate
Court under Acts 1907, p. 237, §2.  *Reversed.*

*Kumler & Gaylord,* for appellant.
*John C. Farber* and *Charles E. Thompson,* for appellee.

JORDAN, J.—This appeal was transferred from the Appel-
late Court to the Supreme Court under the authority of
section two of the act of March 9, 1907 (Acts 1907, p. 237,
§1393 Burns 1908).  The action was instituted by appellee
in the Tippecanoe Circuit Court to recover damages due to
the alleged negligence of appellant company while he was in
its employ in the capacity of motorman on one of its electric
cars.  The cause was venued to the Clinton Circuit Court,
wherein, upon the issues joined upon the complaint by the
general denial, there was a trial by jury and a general ver-
dict returned in favor of appellee, assessing his damages at
$6,500.  Along with the general verdict the jury returned
answers to a series of interrogatories.  A motion for judg-
ment on the latter in favor of appellant was denied, as was
also a motion for a new trial, and judgment was rendered
upon the verdict.

The errors assigned and argued by appellant's counsel
are based on the overruling of each of the aforesaid mo-
tions.

The complaint, among other things, alleges that on and prior to July 4, 1903, defendant company owned, controlled and operated a certain electric street railway system in and upon certain streets of the city of LaFayette, Tippecanoe county, Indiana, and the town of West LaFayette, in said county; that one of its lines extended to a pleasure resort about four miles from the city of LaFayette, known as "Tecumseh Trail," and this line was and is known as the "Soldiers' Home line;" that said street railway system was duly equipped with cars operated by electricity, and used by defendant company in the transportation of passengers; that the defendant was on said day and date, and ever since has been, a common carrier of passengers; that in operating said electric street railway system and the cars run thereon, it became, and was on the day aforesaid, necessary for defendant company to hire, employ and keep in its service a large number of men, skilled in running and operating electric street-cars, commonly known as motormen; that on said July 4 great numbers of passengers were transported over the Soldiers' Home line and other lines of the defendant company's system, and in the performance of theses services as motormen on said day it required greater care, skill and attention on the part of each motorman in the performance of his duties to avoid accident in making the time required by defendant company in the operation of its cars over said system than on ordinary days, when passenger traffic was not so heavy; that prior to said day and date the company had in its employ William Stanley, who, under such employment, worked at night in and about defendant's barns, keeping its cars in running condition, and doing such other manual labor as was required of him; that said Stanley, as such employe and servant, was on duty the entire night of July 3, 1903, and until about 10 o'clock of July 4, at which time he was ordered and directed by defendant company to prepare himself for work during the remainder of said day as a motorman on one of its street-cars; that

said Stanley, on the day and date last aforesaid, ''was inexperienced in the running and handling of an electric street-car, having had but little experience in handling and operating such cars as a motorman, and, by reason of said inexperience, he was an improper person to be entrusted with the handling of said car, and especially on a day when large crowds were to be carried, and when it was necessary to exercise greater care and caution in the handling of such car than on ordinary occasions, all of which defendant well knew and had full knowledge of; that, notwithstanding the inexperience of said Stanley as stated, and notwithstanding the fact that he had been at work for defendant company the entire night of July 3, 1903, and continuously until about 10 o'clock of the day following, defendant company, well knowing all of said facts and well knowing the fact that said Stanley, by reason of overwork and the loss of sleep, was an unfit person at said time to be entrusted with the handling and operating of a street-car on defendant company's line as a motorman, ''carelessly and negligently placed him in charge of one of its electric street-cars as such motorman at about 11 o'clock a. m. on said July 4, 1903, and started him over its line and system in charge of said car as such motorman, and carelessly and negligently continued him in such service without rest or intermission until about 4 o'clock p. m. on said day, when the injury and accident to plaintiff, hereinafter set forth and complained of, occurred;'' that the car which plaintiff was operating at the time of the accident was an open one, having a drop curtain which rendered it impossible for him to see the rear of his car or to observe the track in the rear of his car; that on the afternoon of said day, while in the discharge of his duty as a motorman on the electric street-car under his charge, and while running the same over the defendant's Soldiers' Home line from the city of LaFayette to said Tecumseh Trail, he was signaled to stop for the purpose of discharging and receiving passengers; that in obedience to such signal

he stopped his car for such purpose; that while the car was standing, for the purpose aforesaid, without notice or warning and without any knowledge of the approach from the rear on said track of another car, said Stanley ran the electric car of defendant, on which he was then and there working as such motorman, against and into the rear end of the car on which plaintiff was working; that said car was run at a high and dangerous rate of speed, to wit, ten to twelve miles an hour, and with such force, power and violence as to knock plaintiff down and throw him backwards over, upon and against certain of the seats of the car on which he was working, by reason of which he was seriously injured; that, by reason of the loss of sleep, of overwork, and of being up the entire night previous to the injury to plaintiff, said William Stanley was not in a fit condition, either physically or mentally, to be entrusted with the handling of the electric car of defendant company then in his charge as motorman, all of which defendant well knew at the time of placing said Stanley in charge of said car, and was possessed of such knowledge prior to the accident and injury to plaintiff above set forth; that the injury to plaintiff hereinbefore referred to was caused by and resulted from the carelessness and negligence of said defendant in placing said Stanley in charge of the electric car, on which he was working as a motorman at the time of the accident, at a time when said Stanley was inexperienced in the handling of an electric car as such motorman, and while said Stanley was unfit to perform the service as motorman by reason of overwork and loss of sleep, and through the carelessness and negligence of said defendant company in permitting said Stanley to have charge of said car as such motorman when it, defendant company, well knew and had full knowledge of the inability of said Stanley to perform such services as motorman, and of his inexperience in handling and operating an electric car, and by and through the carelessness and negligence of said defendant in permitting Stanley to be and remain in charge

of such car as such motorman continuously from the time such car was placed in his hands on July 4, 1903, until the happening of the accident about 4 o'clock p. m. on said day, without rest, sleep or intermission, which, as alleged, wholly incapacitated him for services as a motorman on the day aforesaid—of all of which defendant company had knowledge.

Counsel for appellant argue that the complaint, under the facts therein, alleges "two acts of negligence, viz.: (1) Knowingly placing Stanley in charge of the electric car causing the injury, at a time when he was inexperienced in the handling of an electric car; (2) knowingly placing said motorman in charge of said car while he was unfit to perform the services of a motorman, by reason of overwork and loss of sleep; and also alleges that the injury to appellee was caused by the combined effects of said two acts of negligence." It is therefore insisted that, said two acts of negligence having been charged as jointly constituting the proximate cause of appellee's injury, the record must show that they both contributed to said injury. The argument is further advanced that, inasmuch as the jury in the answers to interrogatories "find that the collision was caused by the omission of Stanley to observe a known rule, i. e., by his carelessness, and not from his alleged inexperience in handling an electric car," one of said two acts of negligence constituting the alleged proximate cause of appellee's injury has necessarily been found by the jury not to have contributed thereto, and judgment should have been given in favor of appellant.

It is true, according to the decisions in *Terre Haute, etc., R. Co.* v. *McCorkle* (1895), 140 Ind. 613, and *Southern R. Co.* v. *Jones* (1904), 33 Ind. App. 333, that where the complaint under its averments proceeds upon the theory that two acts or grounds of negligence therein averred are combined or joined together to constitute the plaintiff's cause of action, then, under the circumstances, both acts of

negligence must be proved on the trial before the plaintiff is entitled to recover. In a case, however, in which several acts or grounds of negligence are sufficiently alleged in a complaint, a recovery upon the trial will be justified if it be proved that the injury complained of was the result of one or more of said acts of negligence. *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, and authorities cited.

It is difficult to determine from the complaint whether the pleader intended to combine the two acts of negligence therein averréd and as thus united predicate appellee's right of action thereon, or whether he intended in drafting the pleading to set up separately each act or ground of negligence as a cause of action, under the rule asserted in the case just cited. It is true that appellant, at and prior to the accident in controversy, had a printed rule, of which Stanley had knowledge prior to the collision in question. This rule provided that when one car was following another, the motorman of the rear car should keep in the rear of the first car at least one hundred feet, in order that he might have room to stop his car in the event the first car should suddenly stop to take on or let off passengers, or for any other reason. The jury found in its answers to interrogatories that Stanley did not obey this rule at the time of the accident, but that his violation thereof resulted from his overwork by appellant and loss of sleep, and that by reason of such overwork and loss of sleep he was, on the day of the collision, in an unfit condition to be entrusted with the handling of an electric car on defendant's road, and that the defendant knew of his loss of sleep at the time it placed him in charge of the car on the forenoon of the day on which the accident occurred; that Stanley, at the time plaintiff received his injuries, was inexperienced in running and handling electric cars, of which fact the defendant had knowledge; that the collision of the two cars in question was caused by reason of Stanley's inexperience in handling and operating electric

cars, and by reason of his being an unfit person, on account of his overwork and loss of sleep, to handle and operate an electric car; that the car in charge of Stanley, which collided with the car upon which plaintiff was working, thereby injuring him, could have been stopped and the collision prevented had it at the time of the accident been at least one hundred feet in the rear of the car operated by plaintiff. Counsel for appellant insist that by this finding, and the further finding that Stanley knew of the existence of the rule, it is manifest that the cause of the collision which resulted in the injury to appellee was the omission of Stanley, a fellow servant of appellee, to observe the rule of appellant company, which required said motorman of a following car to keep at least one hundred feet in the rear of the first car.

3. It is true that, under this special finding, Stanley did not comply with the rule of the company, but the jury further found that his omission to observe the rule in question was not the result of his negligence, but the result of his overwork and loss of sleep. Appellant, having placed him in charge of the car as motorman at a time when, as shown, it knew he was overworked and had gone without sleep or rest for twenty-four hours and over, ought to have known that, under the circumstances, he was not in condition properly to exercise the faculties or senses with which he was endowed. Having placed him in charge of the car in his unfit condition, because of his overwork and loss of sleep, appellant is not in a position successfully to interpose his noncompliance with the rule in question in order to exempt itself from liability in this action. *Pennsylvania Co.* v. *McCaffrey* (1894), 139 Ind. 430, 29 L. R. A. 104; *Republic Iron & Steel Co.* v. *Ohler* (1903), 161 Ind. 393.

In this latter case we said: "It is not reasonable to assert that a man who has labored continuously for a period of forty-eight hours without sleep, or for even a much shorter time, is in his normal condition, or that he, under the circumstances, can properly exercise all of the faculties

or senses with which he is endowed. The law of nature is inexorable in its demands. The cravings of hunger and nature's demand for sleep or rest must have consideration. A human being deprived of sleep for the period which appellee was becomes dull in intellect and apprehension, and necessarily must be more or less unmindful of his surroundings.'' The answers of the jury to the interrogatories afford no grounds for appellant to demand judgment in its favor over the general verdict.

It appears that the collision in which appellee was injured occurred about 4:30 o'clock on the afternoon of July 4, 1903, while the car operated by Stanley and the one oper-

4.  ated by appellee were running from the city of LaFayette to the ''Tecumseh Trail.'' The point where the collision happened was four miles from LaFayette. Some time after the collision the two colliding cars were run ahead for some distance, but were finally coupled together and run to the public square in the city of LaFayette. While the cars were at the latter point, Charles Fansler, superintendent of appellant, came up to the cars. Some of appellant's employes were giving a statement of how the accident occurred. O. B. Whisenand, a witness on behalf of appellee, was permitted by the court to testify that Fansler, the superintendent, at that time and place made the declaration that he (Fansler) ''should have known better than to put Stanley on the car.'' This evidence went to the jury over the objection and exceptions of appellant. The latter also unsuccessfully moved to strike out the evidence and withdraw it from the consideration of the jury. That this declaration of Fansler, under the circumstances, was inadmissible as evidence to sustain the issue on the part of appellee is manifest. It was made by Fansler long after the occurrence of the collision or accident by which appellee was injured, and some four miles away from the place where the accident happened. It was no part of the

*res gestae,* nor was it made within the scope of Fansler's duty as the agent of appellant. It appears that Fansler, on the forenoon of the day on which the accident occurred, but long prior thereto, placed Stanley in charge of the car in question to operate it as a motorman, and the declaration in question referred to that time. It related to a matter which had occurred before the collision and at a different time and place. It may be said to have been a combination of a matter in the past with the opinion of Fansler as to what he ought not to have done. In its effect it was an admission by him that he had done wrong in placing Stanley in charge of the car. It was certainly prejudicial to appellant, as it may have exercised a controlling influence over the jury. That the admission of this evidence against appellant constitutes reversible error is settled by the decision of this court in *Ohio, etc., R. Co.* v. *Stein* (1892), 133 Ind. 243, 19 L. R. A. 733, and authorities cited. See, also, *LaRose* v. *Logansport Nat. Bank* (1885), 102 Ind. 332; *Ohio, etc., R. Co.* v. *Levy* (1893), 134 Ind. 343; *Treager* v. *Jackson Coal, etc., Co.* (1895), 142 Ind. 164, 166; Gillett, Indirect and Collat. Ev., §§34, 333; 1 Am. and Eng. Ency. Law (2d ed.), 695.

In *Ohio, etc., R. Co.* v. *Stein, supra,* the court said: "The rule is well settled that where evidence of an influential character is erroneously allowed to go to the jury it will be presumed to have prejudiced the objecting party, and unless this presumption is rebutted the judgment must be reversed."

As a reversal must follow for the error of the trial court in admitting in evidence the declaration in question, we do not consider the other questions discussed by counsel for appellant, as it is evident, we think, that they will not arise on another trial.

Judgment reversed and cause remanded, with instructions to grant appellant a new trial.