# DAVIS v. COX.

[No. 21,977.   Filed November 21, 1912.]

1. APPEAL. — *Review.* — *Verdict.* — *Conflicting Evidence.* — Where there is evidence to support a verdict, the Supreme Court will not weigh conflicting evidence in order to reverse the cause. p. 490.

2. CONTRACTS.—*Marriage Contracts.*—*Conditioned on Antenuptial Agreement.*—*Validity.*—A contract of marriage, a condition of which is the entering into an antenuptial contract, cannot be enforced unless such antenuptial contract is reduced to writing so as to bring it within the statute of frauds, but the rule does not apply as to a mutual, unconditional marriage contract made independently of an agreement for an antenuptial contract. p. 490.

Davis *v.* Cox—178 Ind. 486.

3. CONTRACTS.—*Breach of Marriage Promise.—Trial.—Cross-examination.—Evidence.—Competency.*—Where defendant, in an action for breach of promise to marry, had pleaded a mutual rescission of the agreement to marry, and there was evidence tending in that direction, and a witness testified to a conversation with plaintiff in which plaintiff said that defendant's children had caused trouble, but that defendant had said he would marry regardless of the opposition of his children, and that a certain newspaper article had led up to the conversation, such article, not having been the subject of direct examination and having only been referred to by the witness in a voluntary statement in fixing the time and the cause of the conversation was incompetent for any purpose, and its admission on cross-examination was prejudicial error. p. 491.

4. APPEAL. — *Review. — Incompetent Evidence. — Presumption.* — Where incompetent evidence is admitted it will be presumed to have been prejudicial to the complaining party. p. 493.

5. TRIAL.—*Reception of Evidence.—Objection.—Form.*—No question is presented by an objection to the admission of evidence, that it is incompetent, immaterial and irrelevant, and does not tend to support the issue. p. 493.

6. WITNESSES.—*Examination.—Questions.—Form.*—Where defendant, in an action for breach of promise to marry, had pleaded the mutual rescission of an antenuptial agreement, and in response to a question put to the plaintiff, asking why she had not signed such antenuptial agreement, she answered that she did not sign it because defendant informed her that he was in trouble with his children and that they had better postpone matters for a while, there was no error in receiving the conversation, although it would have been better and in proper form to have asked the witness to give a conversation, if she had one, on the subject. p. 493.

From Wabash Circuit Court, *A. H. Plummer,* Judge.

Action by Flora Cox against William Davis. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*Williams & Clawson, Brownlee & Cline* and *Warren G. Sayre,* for appellant.

*John R. Hadley* and *Frank O. Switzer,* for appellee.

MYERS, J.—Appellant was sued by appellee for breach of an alleged promise of marriage. The cause was tried by a

jury, and a verdict rendered in favor of appellee, and over motion and causes for a new trial judgment was rendered against appellant.

The only error assigned here and relied on is that of overruling the motion for a new trial, on the grounds, principally, that the verdict is contrary to law and is not sustained by sufficient evidence, and we are urged to a consideration of the evidence as not being sufficient to support the verdict and judgment, owing to the claimed intervention of the statute of frauds, involving an alleged nonexecuted antenuptial contract, the execution of which is claimed to have been a condition of the marriage agreement.

It is certainly established by the evidence that appellant had sought appellee with a view to matrimony, that the subject was discussed between them a number of times, and that in the earlier stage of the courtship there was talk of appellant paying appellee a sum of money. There was quite a disparity in their ages, appellant being the elder. He was a widower and she a widow, with a prior acquaintance between them of ten or twelve years, and each had married children. He had property of the value of from $13,-000 to $14,000. Whether she had any property does not appear.

The controversy wages around the fact as to when the agreement to enter into an antenuptial contract was made with reference to the agreement to marry, the contention of appellant being that it was a condition of the marriage agreement that an antenuptial contract should be entered into between them, while the contention of appellee is, that the agreement to marry was without condition, and that the agreement for an antenuptial contract was made after, and wholly independent of, the marriage contract.

If appellee is to be believed, it was after the agreement to marry had been made, and was being acted on. If, on the other hand, appellant's evidence is to be believed, that was

the subject of his insistence from the beginning. Certain it is that appellant sought appellee's hand in matrimony, and procured her to accompany him from Marion, where both lived, to Wabash, where they first talked the subject over, and her answer and promise were given a week or two later. The uncontroverted evidence then shows that on September 21 appellant sought appellee to fix the date for their marriage, and she did fix September 26, 1906, and she arranged to go to Warsaw to be married on that day. The arrangement then made was that appellant would have an antenuptial contract drawn and would sign it, and as appellee went to the station to take the train on September 26, she was to go by the attorney's office and sign it. Appellant had such contract drawn under date of September 25, and signed it, but in the forenoon of September 26 he notified appellee that he would not be married at that time. He had procured the application blanks himself, and made out and signed his own, and took her blank and had it filled out and signed by her, and then took both to the clerk's office on the evening of September 25, and procured a license to marry appellee. The parties both agree that on account of opposition by appellant's children it was agreed to postpone the marriage. Appellee did not sign the antenuptial agreement, and was not requested to do so, and did not decline or refuse to do so. The controversy is therefore made to wage around the proposition whether the antenuptial agreement was a condition of the promise of marriage, or a subsequent agreement, and if a condition of the promise, whether the entire contract was invalid under the statute of frauds, as being interdependent.

As to the first proposition, there was a sharp conflict in the evidence of the two parties, but the jury has found specifically on that question, in answer to interrogatories, that a mutual, unconditional promise to marry was entered into in August, 1906; that the first conversation on the subject

was later, and was in the nature of a cash marriage settlement, and that the conversation was had sometime after the promise and agreement to marry, but that the final agreement as to the antenuptial contract was made September 21, 1906. Under this state of the evidence, it is clear

1. that the jury accepted appellee's version of the matter, and as there was evidence to support it, we would be under the necessity of usurping the function of the jury, and not only weighing the evidence, but holding that appellant's version of the matter should have been accepted, in order to reverse the judgment on the evidence, which we are not authorized to do. *Clarkson* v. *Wood* (1907), 168 Ind. 582, 81 N. E. 572; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 456, 78 N. E. 1033; *Robinson & Co.* v. *Hathaway* (1898), 150 Ind. 679, 50 N. E. 883; *Deal* v. *State* (1895), 140 Ind. 354, 39 N. E. 930; *Oglebay* v. *Tippecanoe Loan, etc., Co.* (1908), 41 Ind. App. 481, 82 N. E. 494.

Reliance is here placed on the case of *Caylor* v. *Roe* (1884), 99 Ind. 1. It cannot be doubted but that a contract of marriage, a condition of which is the entering into

2. an antenuptial contract, cannot be enforced unless such antenuptial contract is reduced to writing so as to bring it within the statute of frauds. The reasons for the rule are pointed out in detail in the case last cited, and numerous authorities cited. The doctrine is also supported by other cases, and grounded in reason. There cannot, where the contract is entire and the different parts of it independent, or conditioned on each other, be a severance, so as to uphold one part and disregard another part, where any portion of it is within the statute of frauds. *Zimmerman* v. *Zehendner* (1905), 164 Ind. 466, 73 N. E. 920, 3 Ann. Cas. 655; *Carskaddon* v. *City of South Bend* (1895), 141 Ind. 596, 39 N. E. 667, 41 N. E. 1; *McNutt* v. *McNutt* (1889), 116 Ind. 545, 19 N. E. 115, 2 L. R. A. 372; *Lee* v. *Hills* (1879), 66 Ind. 474; *Rainbolt* v. *East* (1877), 56 Ind.

538, 26 Am. Rep. 40; *Flenner* v. *Flenner* (1868), 29 Ind.
564; *Wilson* v. *Ray* (1859), 13 Ind. 1; *Fuller* v. *Reed*
(1869), 38 Cal. 99; *Frank* v. *Miller* (1873), 38 Md. 450;
*Henry* v. *Henry* (1875), 27 Ohio St. 121; *Finch* v. *Finch*
(1860), 10 Ohio St. 501; *Mallory's Admr's* v. *Mallory's
Admr.* (1891), 92 Ky. 316, 17 S. W. 737; *Carpenter* v. *Com-
mings* (1889), 51 Hun 638, 4 N. Y. Supp. 947; *Featherstone,
etc., Mach. Co.* v. *Criswell* (1909), 36 Ind. App. 681, 75 N.
E. 30; *Glass* v. *Hulbert* (1869), 102 Mass. 24, 3 Am. Rep.
418; *Steel* v. *Fife* (1878), 48 Iowa 99, 30 Am. Rep. 388;
*Johnson* v. *Brook* (1856), 31 Miss. 17, 66 Am. Dec. 547;
*Grant* v. *Levan* (1846), 4 Pa. St. 393; *Sanborn* v. *Sanborn*
(1856), 7 Gray 142; *Comer* v. *Baldwin* (1870), 16 Minn. 172.

The difficulty here lies in the inapplication of the doc-
trine to the evidence. In the case of *Caylor* v. *Roe, supra,*
the question arose on a demurrer to a paragraph of com-
plaint, in which it was alleged that the marriage agreement
was conditioned on an antenuptial agreement, which pre-
sented a very different question from the one before us.
Appellant has pleaded a mutual rescission of the agreement
to marry, and there was evidence tending in that direction.

One witness testified to a conversation with appellee,
3. in which it is claimed that appellee had said to her
that appellant's children had caused trouble, and it
had stopped their marriage, and that appellee had said to
her that appellant had said that they would go ahead and
marry, regardless of the opposition of his children, if she
said so, but that she objected; that a certain newspaper
article had caused or led up to the conversation, and, as a
part of the cross-examination, the article was admitted in
evidence. Objection was made that it was not a part of the
cross-examination and that it did not appear that appellant
had anything to do with its publication. It was stated that
it was offered as a part of the conversation which grew out
of it. The contents of the article had not been the subject

of direct examination. It had only been referred to by the witness in a voluntary statement, in fixing the time of the conversation, and as the cause leading up to it. Neither did the cross-examination disclose the contents of the article, or any conversation in regard to it, to authorize its introduction as a part of the cross-examination.

When the article was offered in evidence, the judge stated that it might be read, but he would state to the jury that it could not bind defendant or plaintiff, unless it was written at their suggestion or dictation. After it was read, the judge stated to the jury: "In order that you may not be misled by the reading of this article, I will state to you now, that the only reason the court now permits that to go to the jury is to show what led up to the conversation between the witness and the plaintiff, but it can not be binding, the article itself, either upon the plaintiff or upon the defendant, in this case. Its only purpose is to show what led up to the conversation."

On the issue of mutual rescission, appellant and two witnesses had testified as to conversations with appellee tending to support that answer. The newspaper article in question was highly sensational and facetious, and stated, among other things, that when appellant informed his daughter of his plans, he met with a strong rebuke, and, in order to prevent any marriage from taking place, the daughter lost no time in informing the other children, and that a council of war was immediately held, and the children at once began to show the old gentleman why he should not marry, and won him over to their way of thinking, and he gave up the idea of matrimony. It is to be gathered from the evidence in the case that it was the objection of his children which at least deferred the marriage, and while this newspaper article was wholly incompetent evidence on the issue of rescission, yet it did run toward the issue of mutual rescission, as disclosing, at least, that the reason for appellant's course

was the opposition of his children, and not mutual rescission, as he claimed. We cannot say that this article was not influential on that issue, even though admitted, as was stated by the judge, as showing what led up to the conversation detailed by the witness. It was improper for any purpose, and we doubt whether it could be said that it was not influential with the jury; and the rule is that if incom-

4. petent evidence can be material or influential on the issues in a case, it will be presumed to have been prejudicial. *Fort Wayne, etc., Traction Co.* v. *Crosbie* (1907), 169 Ind. 281, 81 N. E. 474, 13 L. R. A. (N. S.) 1214, 14 Ann. Cas. 117; *Brackney* v. *Fogle* (1901), 156 Ind. 535, 60 N. E. 303; *Robb* v. *State* (1896), 144 Ind. 569, 43 N. E. 742; *Mode* v. *Beasley* (1896), 143 Ind. 306, 42 N. E. 727; *Johnson* v. *Anderson* (1896), 143 Ind. 493, 42 N. E. 815; *Ohio, etc., R. Co.* v. *Stein* (1892), 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733.

Appellee was asked on direct examination: "You may tell the jury why you did not go down to sign it [referring to an antenuptial agreement], if you did not." Ob-

5. jection was made that the evidence to be elicited was incompetent, immaterial and irrelevant, and did not tend to support the issue. The answer was: "Well, the reason I did not go, was because Mr. Davis came across and informed me that he had got into trouble with his children, and that we had better postpone matters a little while until things quieted down a little." The objection made to this question presented no question. However, in

6. view of the answer being the giving of a conversation, it was not error to receive it. The question, in effect, called for, and elicited a conversation, though it would have been better and in proper form to have asked the witness to give the conversation, if she had had one, on the subject.

For the error in admitting the newspaper article the judgment must be reversed, and it is so ordered, with instruc-

tions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 99 N. E. 803. See, also, under (1) 3 Cyc. 348; (2) 21 Cyc. 1244; (3) 40 Cyc. 2500; (4) 3 Cyc. 386; (5) 38 Cyc. 1386, 1387; (6) 40 Cyc. 2417. As. to actions for breach of promise to marry, see 40 Am. St. 172; 63 Am. Dec. 532. As to antenuptial agreements between husband and wife, see 73 Am. St. 898.