## HENSLEY, ADMINISTRATOR, v. HILTON.

[No. 23,673.    Filed May 13, 1921.    Rehearing Denied November 1, 1921.]

1. FRAUDS, STATUTE OF.—*Applicability.—Oral Contract to Make Will.*—A decedent's oral contract to execute a will making claimant against his estate his legatee was within the statute of frauds, and no action can be maintained upon it.  p. 314.

2. FRAUDS, STATUTE OF.—*Contracts within Statute.—Services Rendered in Consideration of Agreement to Make Will.—Recovery on Quantum Meruit.*—Where services have been performed in consideration of decedent's oral agreement to execute a will making claimant against his estate his legatee, which contract was unenforceable under the statute of frauds, claimant is entitled to recover the value of his services, not pursuant to the terms of the contract, but on the *quantum meruit*; the value of the services performed, and not the value of the property agreed to be conveyed, being the measure of damages. p. 314.

3. FRAUDS, STATUTE OF.—*Services Rendered Under Unenforceable Contract to Make Will.—Recovery on Quantum Meruit.— Value of Property to be Conveyed.—Admissibility.*—In an action to recover on the *quantum meruit* for services rendered pursuant to an oral agreement to make a will in favor of plaintiff, such contract being unenforceable under the statute of frauds, the value of the property to be conveyed or the benefit stipulated for cannot be received in evidence on the subject of the value of the services rendered, and such testimony will be excluded, expecially when the value of the equivalent to be rendered is contingent and indeterminate at the time of the execution of the contract.  p. 316.

4. EXECUTORS AND ADMINISTRATORS.—*Services Rendered and Unenforceable Contract.—Recovery on Quantum Meruit.—Presumption of Gratuitous Service.—Proof of Contract.*—In an action against decedent's estate by one claiming under an oral agreement that decedent make a will in his favor in consideration of claimant living with decedent and his wife, proof of the contract and its terms was admissible to rebut the presumption that plaintiff, while living with decedent's family, rendered his services gratuitously, or that they were performed under the mere expectancy that the decedent would leave plaintiff a legacy.  p. 317.

5. APPEAL.—*Review.—Instructions.—Action to Recover for Services in Consideration of Contract to Make Will.—Measure of Recovery.*—In an action against a decedent's estate to recover

on a *quantum meruit* for services rendered pursuant to decedent's oral agreement to execute a will making plaintiff his legatee, if he would live with decedent, *held* that, in view of the evidence, the giving of an erroneous instruction authorizing the jury to consider the value which decedent and his wife placed upon plaintiff's companionship, etc., was prejudicial to defendant administrator. p. 317.

6. NEW TRIAL.—*Verdict Contrary to Law.—Verdict Improperly Affected by Error of Law.*—A verdict improperly affected by any error of law occurring at the trial is a verdict contrary to law. p. 317.

7. TRIAL.—*Instructions.—Refusal.—Repetition.*—It is not error to refuse correct instructions where the subject-matter thereof is embraced in other instructions given. p. 318.

8. PARENT AND CHILD.—*Emancipation of Child.—Parent's Consent to Live with Another Family.*—Where the parents of a child consented to his living with others who, in consideration, agreed to make a will in his favor, such consent emancipated the child. p. 318.

9. PARENT AND CHILD.—*Emancipation of Child.—Consent of Parents.—Failure to Support Child.*—Emancipation of a child may be effected by the consent of the parents evidenced by a written or oral agreement, or from circumstances when the parents fail to support the child. p. 318.

10. WITNESSES.—*Contract to Make Will in Favor of Emancipated Child.—Action for Breach.—Competency of Parents to Testify.—Statutes.*—Where the parents of a child emancipated him by consenting to his acceptance of a contract with his uncle to live with him in consideration of which the uncle agreed to make him his sole heir, the parents were not incompetent witnesses, under §§521, 523, 525 Burns 1914, §§498, 500, 501 R. S. 1881, in the child's action against the administrator of the uncle's estate for breach of such contract. p. 319.

From Owen Circuit Court; *Robert W. Miers,* Judge.

Action by Elbert P. Hilton on a claim against the estate of William J. Smith, deceased. From a judgment for plaintiff, the administrator, Theodore L. Hensley, appeals. *Reversed.*

*Meyers, Gates & Ralston, Inman H. Fowler, Thomas G. Spangler* and *Homer Elliott,* for appellant.

*Willis Hickam, Herbert Hickam* and *Willis Hickam, Jr.,* for appellee.

WILLOUGHBY, C. J.—The appellee, Elbert P. Hilton, filed a claim against the estate of William J. Smith, deceased. The substantial averments of the claim are as follows:

That said William J. Smith on or about the —— day of ———— was married to one Fannie Hilton, who was a sister of John Hilton, the father of this claimant and that they lived together as husband and wife, without having any children born to them, until March 26, 1912, when his wife, the said Fannie Smith, died childless; that the said William J. Smith also died childless on April 2, 1912, each leaving neither father nor mother surviving. That soon after the said marriage the said William J. Smith and wife settled on a farm in Grant county, Indiana, and being childless, the said William J. Smith and wife entertained a very strong affection for this claimant, who was then only nine years of age, and proposed to this claimant and to his father and mother that if this claimant would give up his own home and his parents and go and live with the said William J. Smith and wife until he was grown, the said William J. Smith would make him his only heir and would will or convey to him all of his property so that he would receive the same upon the death of said William J. Smith and his wife. That this claimant and his parents were very much attached to each other and at first declined said proposal, the parents declining to give up this claimant as their child on account of their parental affection for him and this claimant being unwilling to abandon his home and his parents, to whom he was affectionately attached. The claimant further alleges that said William J. Smith and his wife by frequent visits to his said home and parents, and by cultivating the affections of the said claimant and by frequent repetitions of said promises, and by assuring this claimant and his parents that he should have a good home with

them, that he should receive and that said Smith would give him a good education and that upon the death of the said William J. Smith and his wife, the claimant should receive and that he, said Smith, would will to him, this claimant, the whole of his estate, at the time amounting in real and personal property to as much as $15,000 or more. Finally they induced this claimant and obtained the consent of his said parents to accept said proposal and this claimant did in consideration thereof leave his said home and go to live in the home of said William J. Smith on or about October 15, 1891, and did live with them for the succeeding period of about nine years. That during the said period, he resided with the said William J. Smith and his said wife as a member of their own home and that he worked for said decedent at all times on his farm and performed all kinds of labor for him as required and as contemplated by said agreement and waited on him and his said wife when sick and in health, and in all ways aided and assisted them in a kind and affectionate manner and to their comfort and satisfaction so far as he was able to do so. That the said claimant at the age of nineteen years with the consent and encouragement of said William J. Smith, entered a commercial school and afterwards with the consent of said Smith became a telegrapher and bookkeeper in the telegraph and railroad service, and the claimant further alleges that the said William J. Smith during said years of the said claimant's said service and at all times thereafter and until the time of his death accepted the claimant's said services as a full performance by this claimant on his part of the terms of the said agreement and repeated his said promise and assurance that he would before his death execute his will, and thereby make this claimant his legatee and would thereby leave to this claimant at the death of himself and his wife, all of his said prop-

erty, which property at the time of his death and at the time of said promises and agreement amounted in value to the sum of $40,000 and more. But the claimant further alleges that the said Smith on or about March 31, 1912, after the death and after the burial of his wife, which occurred on the previous day, and after he had engaged an attorney to prepare his said will for said purpose, suddenly became violently ill and on April 2, 1912, died without executing said will or in any way making provision for the transfer or conveyance by will or deed of any of his said property to this claimant or paying or providing for the payment to claimant for the services so rendered by him to said decedent under said agreement. And said claimant further alleges that his said services as a laborer and companion and as a member of the household of said decedent, were and are of the value of $10,000, all of which is due and unpaid.

This complaint was answered by a general denial and upon the issue thus joined the cause was submitted to a jury for trial, which returned a verdict for the claimant of $7,100. Judgment was rendered on the verdict of the jury and from such judgment the appellant appealed and assigns as error that the court erred in overruling appellant's motion for a new trial.

The appellant claims that the giving of instruction No. 13 was error, because it gave the jury a false measure by which to ascertain the value of the service for which claimant sought to recover in this action. The instruction is as follows:

"The measure of damages in this case, if you find for the plaintiff is the reasonable value of the service rendered under the contract. In ascertaining the amount of damages, you may take into consideration all the surrounding circumstances under which the contract was made; the fact that the decedent and his wife were without any children of their own; the fact, if it is a

fact, that they desired the companionship, society, love and affection of the claimant; the fact that the decedent desired and needed his help in the home to wait on him when sick, do errands around the home for him, and perform such acts of service and companionship about the home as could not or' would not be performed by ordinary help in such capacity, if you find that such was the fact; you may consider the value which the decedent and his wife also placed upon the companionship as shown by the evidence, if any, love and affection of the defendant as a child; and you may also take into consideration such value as the decedent and his wife placed upon such service as shown by the evidence, if any, in determining what such service was actually worth to the decedent during the time the same was rendered; and from these and all other facts and circumstances in the case, you may assess such damages as in your judgment will fully compensate the plaintiff for all of the service, companionship, association and labor performed in said home for the use and benefit of said decedent and his wife."

The contract sued on in this case is one falling within the statute of frauds and no action can be maintained upon it, and where services have been

1, 2. performed as shown in this case in consideration of the promises made by decedent in the contract alleged the plaintiff is entitled to recover the value of his services, not pursuant to the terms of the contract, but on the *quantum meruit* and in such case the value of the services performed, and not the value of the property agreed to be conveyed, is the measure of damages. *Wallace, Admr.*, v. *Long* (1886), 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222.

In *Lisk* v. *Sherman* (1857), 25 Barb. (N. Y.) 433, the action was upon a contract for services to be performed in the future, and to be paid for in real and

personal estate at the death of the employer and evidence of the value of the property of the testatrix which was offered for the purpose of fixing the value of the services, was held to be properly excluded.

In *Ewing* v. *Thompson* (1870), 66 Pa. 382, in an action to recover for services rendered under parol contract for compensation by a conveyance of land it was decided that the only issue was the value of the services and that upon that issue the value of the land was irrelevant.

In *Fuller* v. *Reed* (1869), 38 Cal. 99, the plaintiff had rendered services in effecting the sale of lands on a parol promise that he should have a portion of the purchase money. It was held that the measure of damages in an action for the services was the value of the services, and that evidence of the value of the lands was inadmissible.

In *Emery* v. *Smith* (1865), 46 N. H. 151, the contract between the parties was by parol, for services for two years at $100 for the first year and $200 for the second year. In an action for services performed under the contract, it was held that the contract was within the statute, and was not taken out of the statute by its performance by one side; that recovery for the services must be sought under a *quantum meruit,* and that the agreement was not competent evidence to affect the amount of the compensation recoverable.

The pretext upon which evidence of the class referred to has sometimes been admitted is that its admission was necessary to prevent fraud. The argument is that the statute was designed to prevent fraud, and should not be made the means of perpetrating a fraud. But in such cases it is not necessary in order to prevent a fraud, to give the contract effect practically by means of an action. The law accords the injured party full compensation for the value of the consideration he has

given on the faith of the contract which his adversary repudiates. However uncertain and incapable of precise valuation the services, rendered under an executory contract invalid by the statute, may have been when the contract was made, their value has ceased to be uncertain at the time when the action is brought. The services having then been performed, are then capable of exact ascertainment, and their value can easily be estimated upon such evidence as is ordinarily submitted to a jury upon any other issue involving the value of services. Further than this we cannot go, without giving the party the benefit of his contract in his action, although the statute declares that it shall not be enforced by an action.

A distinction has been made between executory contracts for services to be rendered in the future, and to be compensated for by the conveyance of property or by some other collateral benefit to be conferred, and contracts in which the parties have themselves agreed upon a certain fixed price to be paid for services to be performed, as for instance, contracts for labor or other services at a stipulated price or sum, extending beyond a year for performance. In cases of the former class, the value of the property to be conveyed or the benefit stipulated for cannot be received in evidence on the subject of the value of the services without giving the party the benefit of the contract; and such testimony will be excluded, especially when the value of the equivalent to be rendered is contingent and indeterminate at the time the contract was made. *McElroy* v. *Ludlum* (1880), 32 N. J. Eq. 828.

The statement in said instruction No. 13 that, "you may consider the value which the decedent and his wife also placed upon the companionship as shown by the evidence, if any, love and affection of the defendant as a child; and you may also take into consideration such

value as the decedent and his wife placed upon such services as shown by the evidence, if any, in determining what such service was actually worth to the decedent during the time the same was rendered; and from these and all other facts and circumstances in the case you may assess such damages as in your judgment will fully compensate the plaintiff for all of the service, companionship, association, and labor performed in said home, for the use and benefit of said decedent and his wife," was an erroneous statement of the law in regard to the measure of damages.

This construction of the law would in fact be permitting the plaintiff to recover on the contract alleged by him in his claim, whereas, the amount the plaintiff was entitled to recover was the value of the services actually rendered and he would not be entitled to recover on the contract. Proof of the contract and the terms of it are admissible to rebut the presumption that the plaintiff while living with decedent's family rendered the services gratuitously.

The contract in this case serves to rebut any presumption which might otherwise have obtained that the services were to be gratuitously performed or that they were performed under the mere expectancy that the intestate would leave the plaintiff a legacy.

There is evidence to the effect that Smith bought 112 acres of land in Owen county, Indiana, and said that he bought it for the claimant and talked about putting buildings on it; that the value of the land so purchased in Owen county was about $5,000 when he bought it; that Smith owned 160 acres in Grant county, Indiana at the time the boy went to live with him and that he continued to accumulate property; that he said he would educate the boy and at the death of his wife and himself would give him all they had; said that he did not intend that his heirs should get any part of

his estate.   In view of this evidence we cannot say that the giving of said instruction was not harmful to appellant.   A verdict improperly affected by any error of law occurring at the trial is a verdict contrary to law. *Robinson Machine Works* v. *Chandler* (1877), 56 Ind. 575; *Deal* v. *State* (1895), 140 Ind. 354, 39 N. E. 930.

Appellant also claims that instructions Nos. 5, 6, and 9 tendered by defendant should have been given and that the court erred in refusing to give each of them.   Said instructions Nos. 5 and 9 were proper statements of the law but it was not error to refuse to give them as they were embraced in other instructions given.   Instruction No. 6 tendered by the defendant was couched in such language as to discredit plaintiff's claim.   It was not error to refuse it.

Under §§521, 523 Burns 1914, §498, 500 R. S. 1881, appellant claims that John S. Hilton, father of the claimant, was not a competent witness, because he was a direct beneficiary of the alleged contract or that he was an agent in the making of it, and that his wife, Elizabeth Hilton, was made incompetent as a witness by §525 Burns 1914, §501 R. S. 1881.

The allegations of the complaint are that the contract was made with the claimant and all the father did was consent to the making of it.   The allegations of the complaint are supported by the evidence.

This consent emancipated the claimant.   Emancipation may be effected by the consent of the parents evidenced by a written or oral agreement, or from circumstances when the parents fail to support the child. *Robinson & Co.* v. *Hathaway* (1898), 150 Ind. 679, 50 N. E. 883; *Haugh, Ketcham & Co.* v. *Duncan* (1891), 2 Ind. App. 264, 28 N. E. 334.

. In this case the claimant was emancipated by the consent of his parents evidenced by the oral agreement shown by the testimony.   The act of John S. Hilton and

10. Elizabeth Hilton consenting to Elbert's acceptance of the contract in question constituted an emancipation of their son and gave him the right to make the contract and to collect in his own right the entire consideration. The very act of accepting the contract by Elbert with the parents' consent made him free from their control, nothing whatever was required by the parents to do except to consent that the boy might accept this contract and this is all that the evidence shows they did. The child by his emancipation having obtained the right to accept the offer of Smith, the consent of the father did not make the father the principal or agent of the son, or even a party to the contract, he was therefore in this case, neither a party to the record nor issue, nor a party in interest. The consideration all went to the son and the right to sue for it was in the son. The witnesses John S. Hilton and Elizabeth Hilton were therefore not incompetent witnesses under §§521, 523, 525 Burns 1914, *supra*.

Other questions raised by appellant's brief question the sufficiency of the evidence to sustain the verdict and as the error in giving instruction No. 13 requires a reversal of the judgment, we deem it unnecessary to discuss them.

Judgment reversed, with instructions to grant a new trial.