## Nolte, Executrix, *v.* Eyden.

[No. 12,052.    Filed March 20, 1925.]

1. **Executors and Administrators.**—*Motion for new trial properly overruled if evidence sufficient to sustain verdict based upon either paragraph of claim.*—Where a claim against an estate was in two paragraphs, one upon the express promise of decedent to pay for services and the other on an implied promise to pay for same, a motion for a new trial on the insufficiency of the evidence was properly overruled if the evidence was sufficient to sustain a verdict based upon either paragraph.  p. 581.

2. **Appeal.**—*Appellate tribunal justified in assuming evidence correctly set out in brief when not challenged by adverse party.*—Appellate tribunal was justified in assuming that evidence set out in appellee's brief, which he claimed was sufficient to sustain verdict, was correctly set out therein when not challenged by appellant.  p. 581.

3. **Executors and Administrators.**—*Decedent's contract to pay for services rendered was held to be express but not special.*—Promise by a decedent to "fully" pay employee for services rendered constituted an express contract, but not a special one. p. 584.

4. **Appeal.**—*Only evidence most favorable to appellee considered in determining sufficiency of evidence to sustain verdict.*—In considering the sufficiency of evidence to sustain a verdict, an appellate tribunal can only consider the evidence most favorable to the appellee, together with the reasonable inferences to be drawn therefrom.  p. 585.

5. **Executors and Administrators.**—*Motion to strike out paragraph of claim because executor intends to file final report within 30 days from filing claim properly overruled.*—A motion to dismiss a paragraph of a claim against an estate on the ground that the executor intends to file his final report in settlement of the estate within thirty days from the date when said paragraph was filed does not bring the claim within the provision of §2828 Burns 1914, Acts 1883 p. 153, to the effect that all claims filed within thirty days of final settlement are barred.  p. 585.

From Wayne Circuit Court; *William A. Bond,* Judge.

Claim by Walter Eyden against Elma Nolte, Executrix of estate of George H. Nolte.  From a judgment for claimant, the executrix appeals.  *Affirmed.*

*Kelley & Kelley* and *Gardner, Jessup & Hoelscher*, for appellant.

*Will W. Reller*, for appellee.

ENLOE, J.—The appellee, hereinafter called the claimant, filed a claim against the estate of George H. Nolte, deceased, for a balance claimed to be due him on account of personal services rendered by him for the deceased. The cause was tried upon an amended claim in two paragraphs, the first being based upon an alleged express promise of the deceased to pay to the claimant what his said services should be reasonably worth, and the second paragraph upon the implied promise of said deceased to pay to the claimant such sum. The services for which such claim was made were continuous and extended over a period of more than sixteen years, and the balance claimed as owing was $10,000.

The cause was tried by a jury and resulted in a verdict and judgment in claimant's favor for $5,000. The overruling of appellant's motion for a new trial is the only error assigned.

It is first insisted that the verdict of the jury is not sustained by sufficient evidence.

1. It is fundamental that if the evidence is sufficient to sustain a verdict based upon either paragraph of said claim, the court did not err, as to the above alleged cause, in overruling said motion, and we shall, therefore, proceed to an examination of the evidence herein.

2. The appellee, in his brief herein, has set out certain testimony which he claims is sufficient to sustain said verdict. The appellant has not challenged the correctness of the said testimony as set out, and we are therefore justified in assuming that the same was correctly set out in said brief.

This testimony shows that prior to August 1, 1906, the said deceased and one Kemper, as partners, were

engaged in a retail business at Richmond, Indiana, selling rugs, carpets, draperies, etc., and that the claimant worked for them as a clerk in their said store; that Kemper died on August 7, 1906, and that thereafter, the said deceased became the sole owner of said store; that during the life of Kemper, the work of the store was divided, Kemper doing the "outside" work and also acting as a salesman in the store, and Nolte taking care of the books; that after the death of Kemper, the claimant did the work formerly done by said Kemper; that he also did other work connected with the operating of said store; that after the death of Kemper, Nolte told one witness that they were getting along fine, that the business was getting better and bigger and that Eyden was taking hold and that he could not see that there was any change so far as the management of the store was concerned. In talking to another witness, the deceased said that Eyden had been with him a long time, had been faithful, and had made him a lot of money.

There was also evidence tending to show that the appellee was a popular salesman, and, as such, had a large personal following in the city of Richmond. It was also shown that the appellee had received offers of employment at Indianapolis, and at Louisville, Kentucky, but had not accepted them; that the deceased, speaking in reference to such offers, had said: "Eyden felt better satisfied to stay with me, because he knew he would be taken care of."

At another time, the deceased, while talking to a witness in reference to Eyden, said: "Walter has got to move, he has been up against it, he is working at nights, we are busy, it is our busy time of year, he is worrying about it and I just can't do the work, I have always promised him that I would take care of him and now is my time to do so, I told Walter to find out what he could buy that house for." In talking to this same

witness at another time, the deceased said: "I gave that house to Walter Eyden; Walter will have a home as long as he lives, and if anything ever happens Walter is taken care of." In talking to this same witness, in a prior conversation, concerning Eyden and his services to deceased, the deceased said: "Well, I will tell you, if you knew me as well as Walter Eyden understands me, Walter knows that he will be taken care of."

There is also testimony that upon one occasion the deceased remarked to his brother-in-law that "he would have to change his will because he wanted to fill the promise he had made to Walter Eyden, that he had promised to deed Eyden the property but had just neglected it." To another witness, the deceased, speaking of Eyden, said: "I am going to do something for him in the end, or when the time comes; I have bought a home for him." In talking to this same witness, upon another occasion, concerning some repairs on the house which he had purchased, the deceased said: "I believe I will let Walter pay for these repairs for he will get the benefit of them, and eventually will get it all." To another witness, in a conversation had about the time he purchased said property and speaking with reference thereto, deceased said: "I am doing this for Walter; he has been in my employ a good many years and has been a good, faithful employee." To another witness, the deceased said: "I have got the same kind of a case in Walter Eyden and I have been intending to deed him the house in which he lives, and I have been putting it off from day to day." There was also testimony by other witnesses that the deceased, speaking of claimant, had said: "Walter is a very trustworthy man and I don't think I could keep store without him"; that Walter could run the store as well as he could; that his business did not worry him; that he was satisfied to leave his business in Eyden's hands and that Eyden

had full control of his business. There was testimony by another witness that after the death of Kemper, the deceased depended upon Eyden in the matter of purchasing goods and would not make any purchases unless Eyden was present to assist in selecting the goods.

Another witness testified that upon one occasion he remarked to the deceased, that it was singular that he could keep such a man as Eyden in his employ, and that the deceased answered by saying: "Eyden will be taken care of all right." That the deceased further said that he was giving Eyden a per cent. of the business and giving him the house in which he was living. There was also testimony that after Eyden moved into the house heretofore mentioned, he took down the fence, set out shrubbery, wired the house for electricity, repaired the furnace, painted and worked over the floors, papered the house, and made other improvements on said property, all at his own expense.

It will be noted that the express promise of the said deceased, relied upon in the first paragraph of said claim, was the promise of said decedent to *fully*
3.   pay and compensate claimant for his services, if claimant would remain with him and in his service so long as he remained in business, or until his death. In other words, the claimant is relying, in this paragraph, upon an express promise of said deceased, not to pay a specific designated sum for said services, but to pay whatever such services should be reasonably worth. The contract relied upon was *express,* but not a *special* one. *Forester* v. *Forester* (1894), 10 Ind. App. 680.

Under this paragraph of claim, the jury had, at most, but two questions to answer:   (a) Did the deceased make to claimant the said alleged promise? and (b) if so, what were the services rendered by claimant rea-

sonably worth over and above all compensation received by him on account of such services?

In considering the sufficiency of the evidence to sustain the verdict, we can only consider that most favorable to the claimant, together with the reasonable inferences which may be drawn therefrom. *Reitz* v. *Hodgkins* (1916), 185 Ind. 163; *Wainwright Trust Co., Admr.,* v. *Kinder* (1918), 69 Ind. App. 88. We hold that the evidence in this record, with the reasonable inferences which may be drawn therefrom, is amply sufficient to sustain a verdict founded upon the first paragraph of said claim.

The appellant also objects to instructions numbered 8, 17, 18, 19 and 20, given by the court of its own motion. These instructions were each addressed to the averments of the second paragraph of said claim. This paragraph of claim was filed January 12, 1924, and on January 15, 1924, before the commencement of the trial, the appellant moved the court "to strike from the files the second paragraph of claim," for the reason "that this defendant, executrix, intends to file her report in final settlement of said estate within thirty days from the date when said second paragraph was filed." This motion the court overruled, and appellant contends that this was error, and that as said paragraph of claim was not rightfully in the record, the court should not have given the said instructions, or either of them. Waiving the question as to the manner in which appellant sought to raise the said question, i. e., whether such question can only properly be raised by answer in abatement, yet, the appellant, by said motion did not bring herself within the provisions of §2828 Burns 1914, Acts 1883 p. 153, and there was no error in overruling said motion.

We find no error in this record.

Affirmed.