WALSH EXTR. ETC. *v.* GILMORE

[No. 19,195. Filed February 5, 1960.]

308

*John R. Walsh* and *John D. Staggenburg,* both of Anderson, for appellant.

*Charles F. Gaus* and *Byer & Gaus,* of Anderson, for appellee.

KELLEY, J.—In an action on a claim against the appellant estate appellee recovered a judgment for $1379.00. The claim was based on specified services

allegedly rendered the decedent, at her instance and request, over a period from June 15, 1952 to April 1, 1953, which were alleged to be "reasonably worth" $5000.00.

Appellant's motion for a new trial, overruled by the court, contains three specifications of error: (1) The decision of the court is contrary to law; (2) the decision of the court is not sustained by sufficient evidence; and, (3) the assessment of the amount of recovery is "erroneous because it is too large."

Under said first specification, appellant contends that the appellee claimant and his wife were incompetent witnesses to testify in behalf of claimant and as to material and relevant matters which occurred during the lifetime of decedent, and that the court erred in admitting such evidence over the objections of appellant. Asserted error of the court in the admission of evidence is not presented for determination by specifications in the motion for new trial that the finding or decision is not sustained by sufficient evidence or that the finding or decision is contrary to law. *Bartenders, Hotel and Restaurant Employees Union Local 103, A. F. of L. of South Bend, Indiana et al.* v. *Clark Restaurants, Inc.* (1951), 122 Ind. App. 165, 169, 102 N. E. 2d 220. The motion must set out the questions, objections, answers and the rulings of the court. *Van Ginkle et al.* v. *Mooy, Executor, et al.* (1937), 104 Ind. App. 282, 286, 10 N. E. 2d 759; *Kimmick, et al.* v. *Linn, et al.* (1940), 217 Ind. 485, 486, 487, 488, 29 N. E. 2d 207. See also, *Westfield* v. *General Finance Corporation* (1952), 122 Ind. App. 232, 236, 104 N. E. 2d 136; *Rogers Cartage Company* v. *Peglow et al.* (1952), 122 Ind. App. 481, 482, 106 N. E. 2d 235; *Tompkins* v. *Smith, Executor, et al.* (1952), 122 Ind. App. 502, 517, 106 N. E. 2d 487; *Crawford* v. *State ex*

*rel. Anderson* (1949), 227 Ind. 665, 671, 87 N. E. 2d 877; *McKee* v. *Mutual Life Insurance Company of New York* (1943), 222 Ind. 10, 12, 51 N. E. 2d 474; *Mackey* v. *State of Indiana* (1942), 220 Ind. 607, 609, 45 N. E. 2d 205; *Deming Hotel Company, a Corporation* v. *Sisson, et al.* (1940), 216 Ind. 587, 592, 24 N. E. 2d 912; *Kruzick* v. *Kruzick et al.* (1954), 124 Ind. App. 365, 368, 118 N. E. 2d 376; *Romine* v. *Frank, Administratrix etc.* (1954), 124 Ind. App. 465, 466, 118 N. E. 2d 900; *Schrenker, Executor of Estate of Pontzious, Deceased* v. *Grimshaw* (1954), 124 Ind. App. 493, 498, 119 N. E. 2d 432; *Hire* v. *Pinkerton* (1955), 126 Ind. App. 23, 26, 127 N. E. 2d 244; *Seward* v. *Seward* (1956), 126 Ind. App. 607, 610, 134 N. E. 2d 560. It follows that appellant has not presented the error sought to be charged.

Said second and third specifications may be treated together. Appellant says there is insufficient evidence as to the reasonable value of the services claimed to have been rendered by appellee. Appellant has not assigned as a ground for a new trial any error by the court in the admission of evidence and, therefore, for the purpose of this appeal, we are required to consider the evidence as competent and properly before the trial court.

The court found that appellee "is entitled to recover for the reasonable value of the services rendered to her (decedent) and for the amount of the sums he expended upon said decedent." There is evidence, as delineated by appellee in his brief, that the latter expended the following:

1. Eight automobile trips with decedent, at an "average cost" to appellee of $10.00 for each trip _____$ 80.00
2. Material for repair of flood lamp on back porch and for locks and keys _____ 18.00

3. Material for the repair of front and back
   steps _____ 1.50
4. Mileage cost of ten cents (10¢) per mile
   for approximately 3000 miles on 150
   visits to home of decedent and automo-
   bile trips made with her _____ 300.00
5. Paid out for repair of decedent's radio __ 1.50

There is further evidence, as set forth by appellee, that he went to decedent's residence an average of four times a week for a period of six months and that on each visit he would stay from one to four hours; that he took decedent on eight long trips at $10 a trip, as above noted; that he often took care of decedent's chickens; that on his visits he would take care of the gardens; that he repaired a flood lamp, changed locks on front and back doors and furnished keys therefor, all of which required eight (8) hours of labor; fixed the chicken fence two or three times and the oil heater in the brooder house; put a new damper on the furnace; fixed the freezer once and on another time when he couldn't fix it, he took the meat out of the freezer and put it in a locker at Pendleton and returned it when the freezer was repaired; fixed the back and front steps; unloaded sixty bushels of wheat from wagon and put it in a bin, requiring two to three hours; in winter months, when he went to decedent's home, he "fixed the fire," cleaned out the ashes and carried them into the chicken lot; on two or three occasions he cleaned the walks, front and back, of snow; on several occasions took decedent to the grocery store, the doctor, and the bank, both in Pendleton and Anderson, and to her relatives in Warrington; mowed the lawn several times; had the radio repaired; visited the decedent an average of fifteen hours per week for the first six months, and ten hours per week for the rest of the period (June 15,

1952 to April 1, 1953), and that he believed he had spent a total of 675 hours with decedent.

Appellee testified that during the time aforesaid he was working for Sears, Roebuck and "my daily wages would run two to two and a half an hour," and that he was on a commission basis and had "one big and one smaller week," but his general average would "make" at least $2 to $2.50 an hour. There is no evidence as to the kind or character of work he performed in his occupation nor is there any evidence that his services for the decedent resulted in any loss of his work or income at Sears, Roebuck. There is no evidence that his work at Sears, Roebuck was the same or similar in nature or kind as that performed for the decedent. The record discloses no layman, expert or opinion evidence as to the reasonable value of the said services rendered by appellee. In the absence of any such evidence we are at a loss to perceive the basis upon which the court arrived at the amount of its judgment. There is evidence, we think, as referred to above, which would support an allowance of expenditures and cost of automobile travel by appellee in the amount of $401.00. But we find no evidence of probative value to support the appealed from finding and judgment in the total amount of $1379.00.

Appellee says that the evidence shows and the court found that the "payment and reimbursement" of appellee "was to be effected by means of a will," which decedent failed to do and, therefore, the trial court could determine the amount of recovery claimant should receive in order to be well paid. And, further, that on the last page of her diary, decedent declared that she intended to will to the claimant herein "all or a portion of her money in the bank, five bonds bought in 1946, and her household goods, including Frigidaire and deep

freeze," and the "court below was certainly exercising his prerogative as a trial court and trier of facts to determine, since the decedent failed to make the transfer and conveyance which apparently she planned to make, the reasonable value for the services rendered."

The record discloses no evidence concerning any "money in the bank" belonging to decedent, nor concerning said "five bonds bought in 1946," nor the value of decedent's "household goods, . . . Frigidaire and deep freeze." In fact, there is no evidence showing that decedent owned or possessed any of said items at the time of her decease. There was, therefore, no basis in fact to support appellee's proposal that the court could properly determine the reasonable value of the services rendered merely from a declaration found in decedent's diary. The finding of the trial court cannot rest upon conjecture, surmise, speculation or guess. *Patton* v. *Cooper, Administrator* (1918), 67 Ind. App. 664, 667, and authorities cited therein, 119 N. E. 31.

Appellee cites *Winston et al.* v. *Kirkpatrick* (1941), 110 Ind. App. 183, 37 N. E. 2d 18 and *Nolte, Executrix* v. *Eyden* (1925), 82 Ind. App. 580, 146 N. E. 866 as sustaining his proposition that the court could find the amount of recovery by appellee because the decedent told him that he was to be well paid. The said Kirkpatrick case had no such question before it. The court was there considering the asserted want of evidence to warrant an inference of express or implied contract for services and payment thereof. In the said Nolte case, the court was considering the sufficiency of the evidence to sustain the jury's verdict. It does not appear from the opinion thereof that any question of the amount of the verdict being too large was presented to the court. Appellee seemingly intends to urge that

the amount of his recovery was incapable of measurement by fixed rules and, therefore, the same rested in the sound discretion of the court. To this effect he cites *Henschen* v. *New York Central Railway Co.* (1945), 223 Ind. 393, 60 N. E. 2d 738. That was an action for damages for wrongful death. The court there said, inter alia, and in substance, that in such actions there is no money standard for the measure of damages because the elements lie in the realm of uncertainty and the estimation of damages is therefore left to the sound discretion of the jury within the range of the evidence. Such rule, however, has no application in actions, as here, for the reasonable value of services rendered a decedent.

In *Hensley, Administrator* v. *Hilton* (1921), 191 Ind. 309, 131 N. E. 38, the Supreme Court had before it a case of rendition of services in consideration of decedent's agreement to execute a will making the claimant his legatee. The trial court had given the jury an instruction on the measure of damages which was challenged by the administrator as giving the jury a false measure by which to ascertain the value of claimant's service. Among other things, the Supreme Court said that the contract sued upon fell within the statute of frauds and no action could be maintained upon it; that the claimant was entitled to recover the value of his services, *"not pursuant to the terms of the contract,* but on the quantum meruit and in such case *the value of the services performed* . . . is the measure of damages."* The court continued, apropos here:

"However uncertain and incapable of precise valuation the services, rendered under an executory contract invalid by statute, may have been when the contract was made, their value ceased to be uncertain at the time when the action was brought. The services having

then been performed, are then capable of exact ascertainment and *their value can easily be estimated upon such evidence as is ordinarily submitted to a jury upon any other issue involving the value of services.*"

Appellee further relies upon *First Bank & Trust Company of South Bend, Executor of Estate of Spiro* v. *Tellson* (1954), 124 Ind. App. 478, 118 N. E. 2d 496, as supporting his contention. Said case is not only of no assistance to appellee but militates against him, in that it is stated in the opinion that "Evidence in regard to the value of his services varied from 75 cents to $1.00 on one extreme, to $4.00 an hour on the other." Likewise, in the case of *Johnson* v. *Estate of Gaugh et al.* (1955), 125 Ind. App. 510, 124 N. E. 2d 704, cited by appellee as an aid to his cause, it is stated that evidence of the value of the services specified was introduced. See last paragraph of page 516 of the official report. In the instant action, it seems clear that by reason of the absence of evidence to establish the reasonable value of the services performed, there was insufficient evidence to support the amount of recovery authorized by the judgment herein appealed from.

Furthermore, the bill of exceptions containing the evidence which forms a part of the record presented to us in this appeal is prepared in such fashion that we have experienced much difficulty in attempting to determine the exact evidence before the court. Said bill of exceptions certified to by the official reporter as "a full, true and correct record of all the evidence given upon the trial of said cause," originates with the introductory statement of the reporter on page 25 of the transcript, of proceedings had on the "16th day of January, 1958," and purports to carry on through to and including page 238 thereof. The page of the transcript next immedi-

ately preceding said page 25 also shows an introductory statement of the "following proceedings" as of "the 27th day of March, 1957," with a hand-written ink entry directly above said last mentioned date as follows: "16th Jany, 1958 and." The succeeding page, being page 27, contains an entry of an "Agreement of the Parties" to the effect that the "testimony of Charles F. Gaus and Albert E. Gillmore, given at previous hearing, is hereby ordered stricken from the record"; that certain stated objections made by appellant's counsel to certain stated questions asked of Ellen Gilmore, were sustained by the court and the answers given were ordered stricken from the record; and that "the remainder of the testimony given on direct, cross and re-direct examination of Ellen Gilmore," subsequent to a certain stated question, be stricken from the record.

Beginning on page 28 of the transcript, the testimony of seven witnesses is given, which carries through to page 69. On the latter numbered page, what purports to be the testimony of claimant, appellee, has its start. On the left-hand margin of said page appears a penned, hand-written, red ink entry reading: "Evidence of Albert E. Gilmore Stricken from Record Read P. 27." The pages consecutively next following, down to and including the greater part of page 119, contain what purports to be the direct, cross, re-direct and re-re-direct examination of appellee, and the questions put to him by the court. On said page 119, the direct examination and testimony of said Ellen Gilmore has its inception, and such examination, together with the questions put to her by the court, continues to page 124. At the bottom of said page 124 appears the entry: "AND THIS WAS ALL THE EVIDENCE GIVEN IN SAID CAUSE."

However, on the next succeeding page, being page 125, and a part of page 126, without any marginal or other explanatory entries, is shown what appears to be an: "OPENING STATEMENT" by counsel for appellee for leave to amend the claim by striking therefrom the years 1950, 1951 and 1954, and limiting it in 1952 to the period from June 15th to December 31st, and in 1953 to the period from January 1st to April 1st. Then, on said page 126, the purported examination and testimony of said Ellen Gilmore begins and, together with appellee's Exhibits 1, 2 and 3, carries through to page 230. However, on page 206 appears a marginal penned, hand-written, red ink entry reading as follows: "Evidence Ordered Stricken from Line 14 on to end of Witness See P 27 Lne 13 to 25."

The direct examination of the attorney for the claimant is entered as beginning on said page 230 and carries through together with appellee's Exhibit #4, to page 236. On the left-hand margin of said page 230 appears a penned, hand-written, red ink entry reading as follows: "this Evidence Stricken by agreement Rec P 27." On pages 237 and 238 is entered what is termed the Direct Examination of appellee. On pages 239 and 240 appears the certificate of the official reporter, certifying that said bill of exceptions is a full, true and correct record of all the evidence given upon the trial of said cause and is dated June 27th, 1958. Next follows what is apparently intended to be the settlement by the court and the certificate of the clerk of the court, in the order designated. At no place in the record is there any entry, certificate, or explanation of the connection, if any, with the trial of the cause, of the evidentiary entries subsequent to page 124 of the record, on which page the reporter certified that "THIS WAS ALL THE EVIDENCE GIVEN IN SAID CAUSE." If said evidence,

subsequent to said entry of the reporter, pertained to a trial held on March 27, 1957, clarity would require that there should be an identifying entry or designation by the reporter or clerk to that effect. This becomes particularly important by reason of the fact that if the evidence entries prior to said page 124 pertain to the trial held on January 16, 1958, then the red ink entry on the margin of page 69 stating that the evidence of Albert E. Gilmore, appellee, was stricken from the record would be erroneous, if it be an effectual entry at all, since the agreement of the parties that the evidence of appellee be stricken from the record referred to his testimony "given at previous hearing," that is, a hearing prior to January 16, 1958.

The record contains order book entries showing that the court heard evidence, on the issue presented by the claim, on March 27, 1957 and again heard evidence thereon on April 24, 1957 and entered finding and judgment for appellee for $1000.00. That thereafter, on July 2, 1957 said judgment was set aside and the cause reopened for further evidence. That on January 16, 1958 the court heard evidence, and on January 18, 1958 entered the finding and judgment for appellee herein appealed from. There is no reference in the reporter's statements as to any evidence heard on April 24, 1957 and we, therefore, are without information as to whether the evidence heard by the court on April 24, 1957 is in the record. Additionally, we are left in ignorance as to whether the "previous hearing" referred to in the agreement of the parties to strike out certain evidence, shown on page 27 of the record, has reference to the evidence submitted on March 27, 1957 or that submitted on April 24, 1957 which does not appear to be in the record, since, as we have already noted,

the reporter made no reference thereto in either her introductory statement or her final certificate.

The reporter's final certificate that "the foregoing manuscript . . . contains all of the evidence given in said cause" does not obviate the problem presented because (1) that part of the "cause" which was tried and heard on March 27, 1957 and April 24, 1957 was set aside by order of the court entered July 2, 1957, and (2) there is no formal commencement and conclusion of the bill of exceptions as to evidence heard on April 24, 1957. "A bill of exceptions must have a formal commencement, as well as a conclusion." *Jenkins* v. *Wilson* (1894), 140 Ind. 544, 545, 40 N. E. 39. Further, said certificate of the reporter adds nothing to the bill of exceptions and is surplusage. *Parker* v. *State* (1915), 183 Ind. 130, 108 N. E. 517; *Wagner* v. *Wagner* (1915), 183 Ind. 528, 109 N. E. 47; *Rowan* v. *State* (1916), 184 Ind. 399, 111 N. E. 431.

By such lengthy reference to the record before us, we have intruded upon the sense of appropriate structure, but it became almost a matter of compulsion prompted by our encountered difficulty in attempting to arrive at a determination of the questions somewhat inadequately presented. A perusal of this record, in the condition in which we find it, has not only consumed much time of the court, sorely needed in other matters before us, but has suggested unasserted errors and irregularities which we cannot here discuss and which may not occur if another trial of the cause becomes necessary.

There is too much disparity between the amount of the judgment entered and the amount of recovery established by the evidence, to warrant a directed remittitur. It, therefore, seems proper to reverse the judgment appealed from.

321

The judgment is reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings.

Bierly, P. J., and Gonas and Smith, JJ., concur.

NOTE.—Reported in 164 N. E. 2d 358.