## Henry Johnson *v.* The State.

1. **Murder.** *Evidence of statement by deceased, when hearsay.*
   J. was on trial for the murder of C., a child. J. had whipped the child severely. On the day after the whipping the child said to B., J. not being present, that he then felt a pain in his head caused by the whipping which J. had administered to him the day before. *Held,* that it was error to admit in evidence B.'s testimony of what the child said.

2. **Same.** *Husband or wife as witness. Failure to call. Section 1601, Code of 1880.*
   Under § 1601, Code of 1880, which provides that "Husband and wife may be introduced by each other in all causes, civil or criminal," the fact that a husband, being tried on a charge of murder, fails to introduce his wife in his behalf is not a legitimate subject of discussion by counsel or of consideration by the jury, and it is error for the court to give an instruction call-

63　313
75　144

ing attention to such fact, but the case must be decided solely upon the testimony introduced, without regard to the failure of the husband to call his wife in his behalf.

APPEAL from the Circuit Court of Adams County.

HON. RALPH NORTH, Judge.

Henry Johnson was indicted for the murder of his step-child, a boy aged six years, and was convicted and sentenced to be hanged. The evidence showed that he gave the child a severe beating, and that five days afterward the child died. The beating was given on Sunday. On Monday next following the child went to the house of one Amy Bradley. She was allowed to testify that the child then said to her "that his head was paining him from the beating his papa gave him on the day before." The defendant objected to the admission of this testimony on the ground that he was not present when the statement was made by the child. The mother of the child and the wife of defendant was not called to testify. The ninth instruction for the State was as follows : " The court instructs the jury that under the laws of this State the State cannot in a criminal trial call upon the wife of a man to testify, but that the defendant can call her to testify in his favor."

The defendant appealed.

*J. S. Morris*, for the appellant.

1. Fatal was the error of the court below in permitting counsel for the State to get their witness, *Amy Bradley*, to tell the jury what the little boy *said* at her house on Monday evening about " the beating papa gave him on yesterday." This alleged declaration of the little boy on the next day, when the accused is not shown to have been present, is admissible in evidence upon no principle whatever. It was not *res gestæ*. There is nothing in it of the character of a " dying declaration." It is simple, unadulterated, and unmitigated *hearsay*, and nothing else.

2. Concerning the State's instruction numbered " 9 " there is no accident or mistake. In this ninth instruction the jury are informed by the court, *in effect*, that it is a pregnant and mysterious circumstance against the accused that he could have, but did not, and the State would but could not, *make a witness of defendant's wife!*

The intimation is very clear by the terms of this instruction that, in the judgment of his Honor on the bench, the testimony of the wife would be a good thing for the State, *who could not get it*, and a bad thing for the defendant, *who would not have it.* It suggests a suppression of testimony by the defendant, and of the existence of proof of his guilt unattainable by the State. It intimates that the wife's silence is ominous of *blood!*

Our statute, which permits the accused in all cases to testify in his own behalf, forbids that his failure to do so shall create any presumption against him, or that the circumstance that he did not testify shall be made the subject of remark or comment by opposing counsel. This instruction points to the silence, not of the accused himself, but of his wife, as a badge of guilt.

*Claude Pintard*, on the same side.

1. It was clearly erroneous to have permitted Amy Bradley, a witness for the State, to state what the child said to her the *next day* after the whipping. This was no part of the "*res gestæ*," and it certainly was not a dying declaration, hence it was only *hearsay* evidence, and was improperly admitted.

2. The ninth instruction for the State is so erroneous that I am at a loss to know by what process of reasoning the court should have arrived at the conclusion that it was correct, and permitted it to be given to the jury. There is nothing in the evidence to show that the wife knew anything about the whipping, or what caused the death of the child. And even if she had known it such an instruction would have been improper, for the State must prove that he was guilty, and he is not called upon to prove by *his wife or any other witness* that he is innocent. This instruction gave the district attorney full authority to argue that the prisoner was guilty, for had he been innocent he would have introduced his wife to prove it, and it may be reasonably inferred that he used it for "all that it was worth."

*T. M. Miller*, Attorney General, for the State.

Since, for the error of the lower court in admitting the testimony of Amy Bradley, the judgment must be reversed (*Field* v. *State*, 57 Miss.), I will not attempt to argue the other assignments, but

would request the court to deliver its opinion upon the instruction for the State, in relation to the wife's testimony, for future use in criminal trials.

ARNOLD, J., delivered the opinion of the court.

It was error to admit the testimony as to what the deceased said on the day after the whipping as to the cause of the pain in the head. *Field* v. *The State*, 57 Miss. 474.

The ninth instruction for the State should not have been given. The jury should have decided the case upon the testimony before them, without reference to what the wife of appellant might have testified if she had been called as a witness. The fact that she was not called, was not a legitimate subject of discussion by counsel, or of consideration by the jury. It is true, that generally unfavorable inferences may be indulged against a party who fails to produce material and necessary testimony which is within his power and control, but this rule has never been applied to cases where the law, on grounds of public policy, has established privileges against being compelled to produce it. *Knowles* v. *The People*, 15 Mich. 408.

It is well settled that where a party avails of his privilege to refuse to answer a question on the ground that the answer might criminate him, or fails to testify in his own behalf, no presumption to his prejudice is to be drawn on this account. *Newcomb* v. *The State*, 37 Miss. 383; 1 Greenlf. Ev., §§ 451–460; 1 Whart. Cr. L., § 782.

Under our statute it was the privilege of appellant to introduce his wife as a witness or not, as he might determine. He was not required by law to introduce her as a witness, and the State could not have done so. The statute does not contemplate or countenance such result as that husband and wife shall, directly or indirectly, be coerced by others into the witness-box. The sanctities of the marital relation cannot be exposed to public scrutiny, in a case like the one before us, without the consent of the husband and wife. If, for any reason, they decline to testify for each other, their decision is final and their motives should not be questioned.

If the failure of the husband to call his wife as a witness in his behalf is to be construed as testimony, or as a circumstance against him, his privilege and option in the matter would be annulled, and he would be compelled, in all cases, to introduce her, or run the hazard of being convicted on a constrained, implied confession or admission, or to make explanations for not introducing her which might involve the sacred privacy of domestic life.

*Reversed.*