BRACKNEY ET AL. *v.* FOGLE ET AL.

[No. 19,436.     Filed April 26, 1901.]

EVIDENCE.—*Contest of Wills.*—*Opinion Evidence.*—The testimony of
a witness, in an action to contest a will on account of the unsound-
ness of mind of testator, as to the capacity of testator to do business
is incompetent. *pp. 536, 537.*

SAME.—*Privileged Communications.—Physician and Patient.—Wills.*
—The action of an administrator in the trial of an action to contest a
will in failing to call the physician who attended testator, and re-
fusing to permit him to testify in behalf of plaintiff, cannot be com-
mented upon by attorneys for plaintiff, nor considered by the jury
in their determination of the case. *pp. 537-540.*

From the Noble Circuit Court. *Reversed.*

*T. M. Eells, L. H. Wrigley, R. W. McBride* and *H. G. Zimmerman,* for appellants.

*L. W. Welker* and *H. C. Peterson,* for appellees.

HADLEY, J.—Suit by appellees to contest the will of Esther S. Davis upon the ground of mental unsoundness and undue execution. Judgment for the appellees, which, as affirmatively shown by the record, rests upon the issue of mental unsoundness.

In the progress of the trial the court permitted the following questions and answers of witnesses on behalf of appellees: "In your judgment, Mrs. Love, from what you have testified to as having observed about her when you were there with her, was she then of sound mind, and capable of transacting business?" A. "I cannot say that she was of unsound mind. I would not suppose she could transact business at the time I saw her." Of another witness: "Based upon the facts you have testified to, state if in your opinion Mrs. Davis during your visits to her was of sound mind, and able to transact business." "Well, I don't think she was capable of doing business." Of a third: "Now Miss Shaffer from what you saw while there in the morning, and learned from speaking to her, was she in your judgment a person of sound mind and capable of transacting business?" A. "I don't know hardly how to answer. She might have been of sound mind. She was suffering so she could not have attended to any business when I saw her."

Incompetent testimony on a material matter is presumed to be prejudicial. *Johnson* v. *Anderson,* 143 Ind. 493. The foregoing testimony with respect to the mental capacity of the testatrix to do business is thoroughly incompetent. The capacity of the testatrix to do business, as applied to the business of making a will, is the precise question the jury was called upon to decide. This it was the duty and exclu-

sive province of the jury to do from a consideration of all the pertinent facts proved by all the witnesses, as affected and controlled by the court's exposition of the law, and not from the crude opinion of witnesses based upon the particular facts within the witness' range. The theory of such an investigation is this: The witnesses may give the facts indicating the mental characteristics and tendencies of the person under inquiry, and, on account of certain well known indescribable aspects of expression and action, non-expert witnesses may, upon the facts they state, express an opinion as to mental soundness generally. The court explains to the jury how the law influences the facts established, and the jury from all the facts as controlled by the law determines whether there was sufficient mental capacity to do the thing in controversy. The witness deals only with facts. The jury with the law and facts. *Hamrick* v. *State,* 134 Ind. 324; *Johnson* v. *Anderson,* 143 Ind. 493; *Yost* v. *Conroy,* 92 Ind. 464, 47 Am. Rep. 156; *Goodwin* v. *State,* 96 Ind. 550.

During the trial Dr. Reiff, the physician who attended the testatrix in her last illness, was offered as a witness by appellees, and upon objection by the appellant, administrator with the will annexed, was excluded, under §505 Burns 1894, §497 R. S. 1881 and Horner 1897. During his argument to the jury, an attorney for appellees, over objection by appellants, was permitted to comment on the exclusion of Dr. Reiff, and to the right of the administrator to waive the statute and permit the physician to testify, and to call him as a witness, among many other things saying, in effect, that the doctor had been with the testatrix shortly before the will was executed, knew her condition, could and would have told it, and appellants kept the witness from the stand to suppress the truth. The court, over the further objection of appellants, instructed the jury that under the law the administrator had the legal right to object to the physician's testifying to any facts that came to his knowledge while

.professionally treating the testatrix, such matters being confidential, but the administrator had the right to waive objection to such testimony, and could himself call the doctor to the stand, and his failure to do so, or to permit him to testify to such facts, might rightfully·be commented·on·by counsel, and that the jury·might consider the conduct of·the administrator in these respects with all the other evidence, in determining the case. These rulings are complained of.

This court has uniformly given §505, *supra,* a broad and liberal. construction in furtherance·of its purpose. *Masonic, etc., Assn.* v. *Beck,* 77 Ind. 203, 207, 40 Am. Rep. 295; *Excelsior, etc., Assn.* v. *Riddle,* 91 Ind. 84; *Williams* v. *Johnson,* 112 Ind. 273; *Heuston* v. *Simpson,* 115·Ind. 62, 7 Am. St. 409; *Morris* v. *Morris,* 119 Ind. 341; *Aetna Ins. Co.* v. *Deming,* 123 Ind. 384; *Pennsylvania Co.* v. *Marion,* 123 Ind. 415, 18 Am. St. 330; *Gurley* v. *Park,* 135 Ind. 440. The purpose of the statute has its roots in public policy, and is intended to promote that confidence·and full disclosure often absolutely necessary to a correct treatment of the patient, and which may be withheld under impending danger of publication. The origin of the rule is of very great antiquity and has never failed of·enforcement by the courts so far as we have observed; and when the legislature of our State in 1861 (Acts 1861, p. 62), and again in 1881 (Acts 1881, p. 289, §§274, 275), extended the right to testify, first to all white persons, and then to all persons, except the classes specified, it was at both times deemed expedient to include within the exception·the facts learned by a physician when professionally attending a patient. And so the statute stands and has stood for forty years, in certain and unambiguous terms, clearly guaranteeing protection to every patient while living, and after he is dead. *Heuston* v. *Simpson, supra; Morris* v. *Morris, supra; Gurley* v. *Park, supra.*

Shall the efficacy of the statute be destroyed by indirection? To claim the protection of the statute is the legal

right of a patient, or his representative, of no less inviola-
bility than any other personal right, and it is wholly incon-
sistent with that right to say that its exercise in a judicial
proceeding shall be allowed to prejudice the cause of him
who claims it.   The cases constituting the class to which
*Hinshaw* v. *State*, 147 Ind. 334, and *Lee* v. *State, post,* 541,
belong, and which are extensively collected in 1 Greenleaf
on Ev. (16th ed.), §195b, and which hold that it is proper
for counsel to comment upon the failure to call accessible
witnesses who know, or are supposed to know, about the
facts in controversy, are founded upon the single presump-
tion that the testimony such absentees might give is rea-
sonably presumed to be prejudicial to the party's cause, or
defense, and cannot therefore be accepted as authority in
cases where the absence of the testimony rests upon a con-
fidential relation which may involve matters prejudicial to
the character or memory of the party, as well as to the sub-
ject-matter of the suit.   It is not difficult to conceive cases
wherein the testimony of a witness would be useful as
affecting the suit, but the statute invoked to protect matters
of a graver concern.   The rule does not therefore apply to
the failure to call a privileged witness.   To sustain the
rulings complained of would amount to little less than a
repeal of the statute.   If to claim its benefits is to be ani-
madverted upon by opposing counsel, and the fancies of in-
genious advocates turned against the cause of the party
making it, and become a proper consideration for the jury
in determining their verdict, then the confidence of the sick
room, demanded by public policy, and which the statute
seeks to secure, would be so exposed to violation as to keep
it in a constant state of intimidation.   Then, again, if the
evidence is incompetent, and its exclusion is to become evi-
dence against the party asking for it, to be considered by the
jury "with all the other evidence," we see no reason why the
rule should not apply in like manner to the exclusion of all
evidence prohibited by statute, and thus allow competent

secondary evidence to arise from incompetent primary evidence. The law suffers no such incongruities.

Whatever the rule may be with respect to personal injury cases and the like, when the party entitled to the privilege is the actor, and brings his suit to recover damages for the particular subject protected by the privilege, as in *Lane v. Boicourt,* 128 Ind. 420, 25 Am. St. 442, and *City of Warsaw* v. *Fisher,* 24 Ind. App. 46, we think it clear that when the question arises as an incident of the defense, as in this case, which the plaintiff must know in advance the defendant is entitled to, and which must be reckoned against, all questions of advantage and unfairness are so completely removed as to forbid any inference of fact to arise from an assertion of the right, and consequently to preclude comment on, or consideration by the jury. See, *Adams* v. *Main,* 3 Ind. App. 232, 236, 50 Am. St. 266; *Boyle* v. *Smithman,* 146 Pa. St. 255, 23 Atl. 397; *Freeman* v. *Fogg,* 82 Me. 408, 19 Atl. 907; *Johnson* v. *State,* 63 Miss. 313; *Bird* v. *State,* 50 Ga. 585; *Blackman* v. *State,* 78 Ga. 592, 3 S. E. 418; *Brown Co.* v. *Perrill,* 77 Tex. 199, 13 S. W. 975; *Wentworth* v. *Lloyd,* 10 H. L. Cas. 589; 1 Greenleaf on Ev. (16th ed.), §595b.

The decision in *Kern* v. *Kern,* 154 Ind. 29, does not affect the question we have here. The question in the Kern case related to the competency of any attorney who had written and attested a will, which had become lost, to testify, over objection as privileged, to the contents of the lost instrument, after the death of the testator. A disclosure of the facts elicited from the attorney, after the death of the testator, was in no sense a breach of confidence. The will being a solemn declaration of purpose to dispose of property, otherwise than as the law proposes, to be effective, its publication upon the death of the maker, by the witness selected by him for that purpose, was essential, and the disclosure of its contents after his death was, therefore, exactly what the testator intended, and that which was intended for publication cannot be regarded as privileged.

There are other questions presented of a character to be avoided, or not liable to arise again in a retrial, that we have passed without consideration. Judgment reversed, with instructions to grant appellants' motion for a new trial.