**McLAUGHLIN, Plaintiff-Appellant, v. MASSACHUSETTS INDEMNITY INSURANCE CO., Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 4158. Decided November 12, 1948.

214

Burr, Porter, Stanley & Treffinger, of Counsel, Lawrence D. Stanley and Bruce G. Lynn, Columbus, for plaintiff-appellant.

W. B. McLeskey, Columbus, and Mark F. McChesney, Akron, for defendant-appellee.

## OPINION

By MILLER, J.

This is a law appeal from the Court of Common Pleas, Franklin County, Ohio. The action was one seeking to enforce the terms of a contract of insurance entered into with the defendant, Massachusetts Indemnity Insurance Company, wherein said defendant agreed to indemnify the plaintiff against loss resulting from accidental bodily injury or sickness.

The answer consisted of two defenses, the first was a general denial, which denied that the injury complained of was the result of an accident. The second set forth a provision of the contract which provided that, "Indemnity shall not be payable for any disability which results from, is contributed to, or caused by intentional injuries or any attempt at suicide (sane or insane) * * *."

The second defense further alleged that if said plaintiff is suffering from the disability set forth in the petition which said fact defendant expressly denies, said disability resulted from, was contributed to, or caused by, intentional injuries or an attempt at suicide on the part of said plaintiff.

On the issues joined the jury returned a verdict in favor of the defendant. The judgment was duly entered and the motion for new trial was overruled. The appeal is from the judgment so rendered.

The first assignment of error alleges that counsel for the defendant was guilty of misconduct during the trial which was prejudicial to the plaintiff. The record so far as pertinent to the issues raised by this assignment discloses that the plaintiff testified that while he was alone in the apartment of a friend he noticed a rifle hanging on the wall, five feet ten and one-half inches from the floor; that since he had never seen it before he removed it from the wall, examined it and then attempted to replace it on the rack. He recalled nothing further after this and did not regain consciousness until he was in the hospital. He had been shot with the rifle, the bullet entering the skull just back of the right eye and passing out approximately in the same location just back of the left eye. Both eyes were destroyed which necessitated their removal. A portion of the brain was also injured. The plaintiff was a doctor of medicine, had served in the Medical Corps of the United States Army and was given a medical discharge in November, 1943. Upon cross-examination of Dr. McLaughlin, the plaintiff, the defendant attempted to show that he had been in ill health and was suffering from an incurable disease which was the reason for the medical discharge, all of which was denied by the plaintiff. The examination disclosed that his medical service record was in the possession of the Veterans' Administration Regional Office at Cincinnati, Ohio. The defendant desired to have this record produced and offered in evidence. The Veterans' Bureau had refused to honor a subpoena duces tecum. The only source from which it could therefore have been obtained was through the plaintiff himself by waiving the privilege accorded him by Section 456, Title U. S. Code, which in part reads as follows:

"All files, records, reports, and other papers and documents pertaining to any claim for the benefits of the provisions of this chapter, whether pending or adjudicated, shall be deemed confidential and privileged and no disclosure thereof shall be made except as follows:

(a) To a claimant or his duly authorized representative, as to matters concerning himself alone, when in the judgment of the Administrator of Veterans' Affairs such disclosure would not be injurious to the physical or mental health of the claimant; * * *."

This section made these records privileged from disclosure

and they could not properly have been made a part of the record without the consent of the plaintiff. By counsel's own admission Dr. McLaughlin's medical service record was in the hands of the Veterans' Bureau.

We have been referred to no case in Ohio which construes this section of the United States Code and have been cited to only the case of McGlothan v. Pennsylvania R. Co., 72 Fed. Supp. 176. In this case the plaintiff's induction record, which was in the hands of the Veterans' Administration Bureau, was held to be within the protection of Section 456. Here the defendant sought to have the plaintiff's induction record introduced merely to show prior inconsistent statements made by the plaintiff. The Court held that such a record was inadmissible because "attacking a witness' credibility cannot be done by showing inconsistencies on collateral matters". However, the Court added:

"In addition, though not decisive of the question, it should be noted that the induction report and the information contained in it are confidential. 38 U. S. C. Section 456."

The record further shows that upon cross-examination of Dr. McLaughlin he was asked numerous questions concerning the reasons for refusing to give his consent, whether or not it would be embarrassing to him, or there was something in it that he was ashamed of. This line of questioning was objected to by counsel for the plaintiff numerous times and the same was overruled. The severity of the cross-examination can be better illustrated by quoting some of the questions asked the Doctor; for example:

"Q. Do you know that we requested your counsel to give us an opportunity to inspect all documents relating to your army service?"

"Q. Did you know that fact—did you know, or were you informed by your counsel that we requested them to let us inspect any and all documents relating to your army service?"

"Q. Well, now, you tell us that you got a series of certificates, medical certificates, and so forth, in connection with your service, we haven't seen those."

"Q. Now, Doctor, you have referred repeatedly to your medical service record, do you know that we have requested your counsel to permit us to inspect that record, did your counsel advise you of that fact?"

"Q. Did Mr. Stanley advise you that we had requested permission from you to examine that army service record?"

"Q. Did he advise you that we had requested permission to

examine the records in the Veterans' Administration Regional Office at Cincinnati, Ohio, in connection with the trial of this case?"

"Q. Did Mr. Stanley advise you that he had refused to permit us to see those records?"

"Q. Are you willing now for the defense to see the records, including the army service records, in the Regional Veterans' Administration Office at Cincinnati?

"Q. I am asking your client on the stand if he is objecting to our seeing his army service records.

"Q. Are you willing. Doctor, to sign a consent that the defendant may see your service record now in the Regional Office in Cincinnati?"

"Q. We could not see it, Doctor, without your consent, I am asking you—."

"Q. Well, do you know of any reason why we could not be permitted to see it?"

"Q. Is there anything in that record which you are ashamed of?"

"Q. Well, then, why the objection to our inspecting it then?"

"Q. Then are you willing to sign that consent regardless of what your counsel may say about it?"

"Q. Do you concede, Mr. Stanley, that you have refused to give that consent?"

"Q. In other words, then, you are refusing to permit us to look at that record, aren't you, yes or no?"

"Q. No, I am asking you, as counsel, are you now willing to permit your client to sign a consent for us to examine that record?"

"Q. Then, you are not willing that he sign a paper permitting us to look at that record, is that it, Mr. Stanley?"

"Q. Now, Doctor, you do know, do you not, that this medical record at Cincinnati is available for your own personal inspection, you know that, don't you?"

"Q. Will you secure that record and produce it in court Monday morning?"

"Q. I simply want the Doctor to say whether or not he is willing or not to produce this record in this court room?"

"Q. You say, Doctor, that you don't know anything in that record that would in any way be embarrassing to you, is that correct?"

"Q. Do you know whether or not your counsel has looked at that record since this case has been in progress?"

"Q. Have you looked at the record since this accident of July 26?"

"Q. Your medical record, your service record while you were

in the army, your medical service record, the record that contains the notation 'colitis—cause undetermined', you say, have you had anybody check that record for you since July 26, 1946, that is what I want you to answer."

"Q. Now, let me ask you, Mr. Stanley, are you going to produce the records in the Veterans' Bureau in Cincinnati for this Court and jury? We are asking you now to produce the records that are in the Veterans' Bureau at Cincinnati for this trial, are you going to do it or not?"

The record also discloses that the refusal of Dr. McLaughlin to waive the privilege was made the subject of comment by counsel for the defendant in the closing argument to the jury, which was objected to and overruled, the argument referred to being as follows:

"Maybe if we had lie detectors, that might have been the answer, but we would have about as much chance of getting a lie detector test in this case as we did of getting the records in Cincinnati."

"If Mr. Stanley had said to us here, 'Mr. McLeskey, there is nothing in these records that would hurt us', no, he didn't say that—'I will not give you any ammunition', in other words, I am not going to lay open to you anything that will help your case, isn't that what he said?—If we saw the records, they would help our case. I am surprised at Mr. Stanley with the experience he has, I thought he would produce those records. I was surprised when he refused the first time to let us see them, at least the second time; there is just one inference that you can draw from it, that if these records were here, they wouldn't do Mr. McLaughlin's case any good at all, but we haven't got them. I have always thought that a law suit was for the purpose of ascertaining the truth and I had always thought that if either side thought anything would reflect on the truth, it is their duty to give it to you. There is a measurement on that board over there, that I don't know whether it goes to our side of the case or whether it doesn't. We had a question of whether we should put that mark on the board or not, but we put it on because it is our duty. It is our duty and Mr. Stanley's to bring here before you, ladies and gentlemen, all the evidence we have got, whether it be favorable to us or the other side; that is my theory of the determination of justice, I may be wrong."

Now we are of the opinion that the Court erred in permitting the cross-examination of the plaintiff concerning his reasons

for refusing to give his consent to the introduction of his army service records, and also in permitting counsel to comment upon it in the final argument to the jury. There is a general rule that where a party refuses to produce evidence which he has in his power to produce, that the jury may properly infer that such evidence if produced will be unfavorable to him. There is, however, an exception to this rule, that where such evidence is privileged and the party refusing to permit its production has a legal right to so refuse, then the protection of the privileged statute will not be allowed to be destroyed indirectly by permitting opposing counsel to repeatedly call for its production or to argue to the jury that the evidence must be unfavorable or it would have been produced. This rule, however, is not uniform, many states holding contra. In 116 A. L. R. p. 1171 the author says:

"There are conflicting views as to whether it is proper for counsel to comment on the exercise by the opposing party of a privilege with respect to testimony or the calling of a witness. By what seems to be the better rule, it is held improper for counsel to make such comments. People v. Terramorse (1916) 30 Cal. App. 267, 157 P. 1134; Brackney v. Fogle (1901) 156 Ind. 535, 60 N. E. 303; William Laurie Co. v. McCullough (1910) 174 Ind. 477, 90 N. E. 1014, 92 N. E. 337, Ann. Cas. 1913 A, 49, overruling Warsaw v. Fisher (1899) 24 Ind. App. 46, 55 N. E. 52; Johnson v. State (1885) 63 Miss. 313; Fannie v. State (1912) 101 Miss. 378, 58 So. 2; Wilson v. Com. (1932) 157 Va. 962, 162 S. E. 15 (express statute; see case infra, II b, 2); Kiehl-hoefer v. Washington Water Power Co. (1908) 49 Wash. 646, 96 P. 220; Sumpter v. National Grocery Co. (Wash.)"

One of the clearest statements on this proposition is contained in Penna. R. R. Co. v. Durkee, 147 Fed. 99, where comment was made by counsel on the exercise of a physician-patient privilege to the effect that the evidence if it had been admitted would have been unfavorable to the person exercising the privilege. The Court here said:

"The prohibition against disclosure of professional secrets is manifestly an exercise of public policy. It secures a right to every individual which he is under no obligation to waive or abandon . . .

To hold that, because the patient does not waive or abandon the prohibition, inferences adverse to his side of the controversy may be drawn by the jury, would be to fritter away the protection it was intended to afford. When it is the legal

right of a party not to have some specific piece of testimony marshaled against him, he may exercise that right without making it the subject of comment for the jury."

In Jones' Commentary on Evidence, 2nd Ed. Section 2195, it is said:

"No unfavorable inference should be drawn from claiming the privilege. To hold that, because the patient does not waive or abandon the prohibition, inferences adverse to his side of the controversy may be drawn by the jury, would be to fritter away the protection which the privilege was intended to afford. When it is the legal right of a party not to have some specific piece of testimony marshaled against him, he may exercise that right without making it the subject of comment to the jury."

Counsel for the appellee has referred to the cases of Katafiasz v. Electric Co., 1 C. C. N. S. 129; **State v. Champion, 109 Oh St 281,** and **Carney v. Krauze, 6 Abs 699.** These cases, however, are not in point with the case at bar since they all deal with a somewhat different state of facts which involves a situation where a party fails to call a witness whose testimony may be claimed privileged as to a material issue in the case. However, here the comment was not upon the failure to call a witness to testify as to a material issue, but was upon the actual exercise of the privilege by the plaintiff. The plaintiff was called upon to waive the privilege so that opposing counsel might produce the evidence. Wigmore in his work on Evidence (3rd Ed.) Section 2386, recognizes the distinction between these two situations:

"When the privilege is claimed by a patient who is also a party, no inference as to the facts suppressed can be drawn,— following here the analogy of the other privileges (ante, Secs. 2272, 2322). Perhaps it is sound to distinguish between failing to call the witness on one's own behalf (which is open to inference); (ante, Sec. 285) and claiming the privilege when the opponent calls him (which is not open to inference)."

It will be noted that Wigmore recognizes the existence of two rules which may exist side by side in any given jurisdiction. Failure to call a witness is open to inference but exercising the privilege on the stand is not.

Further misconduct of counsel is alleged in the argument to the jury because of the fact that reference was made to

certain newspaper articles concerning four individuals who had recently committed suicide and which was not based upon any evidence in the record. This cannot be the basis for error, however, as no objection was made and the trial court was therefore given no opportunity to rule on the same.

The second assignment of error charges that the Court erred in the admission of evidence to which objection was made by plaintiff's counsel. The record discloses that upon cross-examination Dr. McLaughlin was asked the question whether or not he had filed with the Veterans' Administration a claim for disability. We think that this question was not improper as it furnishes the foundation for the service records of the plaintiff being in the possession of the Veterans' Administration Bureau, and entitling the plaintiff to the privileges cited in 38 U. S. C. A. Section 456. It is true the Doctor testified to the amount of compensation he had been allowed, which of course was not material, but this was a voluntary statement and was not in response to a direct question. We find no prejudicial error in this assignment.

The third assignment of error charges that the Court erred in giving plaintiff's instruction No. 1 to the jury before argument, this charge being as follows:

"I charge you as a matter of law that the burden of proof is on the plaintiff, and that before he can recover, he must prove by a preponderance of the evidence that his injury was accidental. I further charge you as a matter of law that if the plaintiff intentionally followed a course of conduct which resulted in his own injury, such injury was not accidental, and your verdict should accordingly, be for the defendant."

We find that this charge has been approved in two recent cases, to wit: **Hassay, Appellant, v. Metropolitan Life Ins. Co., Appellee, 140 Oh St 266;** and **Hrybar v. Metropolitan Life Ins. Co., 140 Oh St 437.**

We therefore hold that this assignment of error is not well grounded.

For the reasons heretofore indicated we find that there is prejudicial error in the record. The judgment is reversed and the cause is ordered remanded for further proceedings according to law.

WISEMAN, PJ, and HORNBECK, J, concur.

## APPLICATION FOR REHEARING.

No. 4158.   Decided December 16, 1948.

By MILLER, J.

This is an application for a rehearing for the alleged reason that even though we be correct in holding the record in the Veterans' Administration to be confidential and privileged, that the plaintiff waived any privilege afforded him by the statute when he testified that the final diagnosis by the army medical staff was "colitis—cause undetermined". The record discloses that the plaintiff testified that he acquired this information when it was announced in the court by the men that decided to give him a discharge. He also testified that he saw it on the record at the hospital but that he never saw it in the record at Washington, and which is now in the Veteran's Administration Bureau. (See page 92 of the record.) The plaintiff was not testifying from the records which are claimed to be privileged, and the privilege has not been waived.

It is also urged by counsel that at no time during the trial did the plaintiff claim the right of privilege and that it is now too late to raise the question for the first time in a reviewing court. We are in full accord with this legal principle but do not think that the facts in the record support the charge. In the cross-examination of Dr. McLaughlin counsel for the defendant clearly indicated that a request had been made of counsel for the plaintiff to produce these records and the same had been refused. This was certainly an exercise of the privilege. Again, in the argument to the jury counsel for the defendant told the jury, "I am surprised at Mr. Stanley with the experience he has, I thought he would produce those records. I was surprised when he refused the first time to let us see them, at least the second time; there is just one inference that you can draw from it, that if these records were here, they wouldn't do Mr. McLaughlin's case any good at all, but we haven't got them". We think that the cross-examination which we quoted in our prior opinion clearly shows that counsel for the plaintiff not only exercised the privilege but it also shows that one of the bases of the cross-examination seemed to be an attempt to get the plaintiff to waive the privilege. Counsel for the defendant in their answer brief cited the case of McCooe v. Railroad Company, 173 Mass. 117, wherein it was stated that the trial court required the client to make the waiver personally.

A motion to certify the record has also been filed alleging

conflict with the cases of Katafiasz v. Electric Co., 1 C. C. N. S. 129, and **Carney v. Krause, 6 Abs 699.** In our opinion we endeavored to distinguish these two cases and we are still of the opinion that there is no conflict.

The application for a rehearing is denied and the motion to certify is overruled.

WISEMAN, PJ, and HORNBECK, J, concur.