312 So.2d 441 (1975)
Tommy Lee DANIELS
v.
Joe M. BEESON, Jr.
No. 48041.
Supreme Court of Mississippi.
May 12, 1975.
Goldman & Goldman, Meridian, Laurel G. Weir, Philadelphia, for appellant.
Gene Brown, Meridian, for appellee.
Before RODGERS, INZER and WALKER, JJ.
WALKER, Justice:
This is an appeal from the Circuit Court of Lauderdale County, Mississippi, where a jury returned a verdict of $15,000 which included punitive and actual damages resulting from bodily injuries allegedly inflicted upon appellee by appellant. We reverse.
The appellee filed his declaration in the Circuit Court of Lauderdale County, Mississippi, alleging that on June 10, 1973, at approximately 9:30 p.m., the appellant "maliciously, willfully, intentionally and brutally" attacked him with a pool cue without cause or excuse. The appellant operated a small lounge north of Meridian, Mississippi, where he sold beer for consumption on the premises.
It was undisputed that on June 10, 1973, appellee entered appellant's place of business, sat down on a stool at the bar and ordered a beer. Present in the establishment at the time were appellant, appellee, appellant's wife and a customer named Riddle.
The evidence as to what transpired is in sharp conflict. According to appellee's version, he was returning home from an *442 outing at a nearby reservoir when he stopped at appellant's place of business to pick up a six-pack of beer. After he had gone inside, ordered the beer and begun drinking one, he observed appellant and Riddle playing pool. They had been playing for some two or three minutes when appellee heard appellant hollering, "All you came in here for is trouble. Get out." As he (appellee) turned around on the bar stool, appellant was coming in his direction telling him to get out, which was followed by appellant pushing him off the bar stool and hitting him in the back of the head with a pool cue while he was trying to get to the door. Appellant continually hit him with the stick, and it was not until he got to his car that other people in the lounge were able to get appellant to stop. He then drove off in his car to his mother's house and she took him to the hospital. Upon arrival at the hospital, he was observed in a bloody, bruised condition with a hole in the back of his head and was treated for a scalp wound two and one-half to three inches in length and in such depth that the doctor could see the skull, but there was no fracture. Several sutures were required beneath the skin and approximately ten sutures were required to close the wound. Due to the injury appellee suffered headaches and dizziness and missed several days of work. There was no evidence that appellee sustained any permanent injuries.
Appellant's description of the altercation was that the appellee came into his place and started asking suspicious questions about his business which he did not answer. Appellee began cursing appellant who told him that he would have to be quiet or leave. Appellee would not stop his cursing, so appellant told him that he had to go home whereupon appellee jumped up off of the stool, reached in his back pocket and pulled out a metal object. While so doing, he allegedly threatened to kill appellant. Appellant hit appellee with the pool cue and hit him again after appellee drew back in an attempt to hit appellant with his fist. Appellant thus claimed that he hit appellee with the cue to protect himself.
Contrary to appellee's version of the incident, Riddle testified for appellant and essentially corroborated appellant's version. Riddle said that he had asked appellee if he wanted to shoot pool, but that appellee replied by cursing him using obscene language. He further testified that when appellant walked over to appellee to tell him to get out, the appellee grabbed appellant's arm and at that time appellant hit him with the cue; that appellee then raised up on the stool and reached toward his back pocket; and that he did not see any knife, gun or piece of metal even though he was about fifteen feet away when the altercation occurred. According to Riddle, appellee was only hit twice and he did not know which blow caused the wound in the upper right hand quadrant of the back of appellee's head.
The appellee brought suit against appellant for $35,461 in actual and punitive damages, and appellant counterclaimed for $150,000. The jury returned a verdict for appellee in the sum of $15,000.
The appellant contends on appeal that a remark made by appellee's counsel during summation to the jury with reference to the failure of appellant to call his wife to testify was highly improper, and the failure of the trial court to grant a mistrial or to instruct the jury to disregard the remark was reversible error.
The attorney's summation to the jury was not recorded by the court reporter, but a bill of exceptions was presented to the trial judge and signed by him with reference to the incident complained of and is now properly before this Court on appeal. The bill of exceptions recites that during the summation to the jury appellee's counsel stated to the jury that "... Plaintiff (appellee) produced every witness available to him and Defendant Daniels failed to produce his own wife as a witness *443 in his behalf"; and that appellant made a timely objection to the remark, requested the trial court to instruct the jury not to consider the remark and moved for a mistrial, but the trial court overruled the objections and motions.
The appellant relies on Mississippi Code Annotated section 13-1-5 (1972) and the construction placed thereon by this Court. This section reads as follows:
Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. A criminal prosecution of either husband or wife for contributing to the neglect or delinquency of a child or desertion or nonsupport of children under the age of sixteen (16) years or abandonment of children shall be deemed controversies between husband and wife for the purpose of this section. But in all other instances where either of them is a party litigant the other shall not be competent as to witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.
This statute has been applied in both civil and criminal cases. Outlaw v. State, 208 Miss. 13, 43 So.2d 661 (1949); Whitney National Bank v. Stirling, 177 Miss. 325, 170 So. 692 (1936).
As far as the husband and wife being competent to testify against each other, the law remains as it was at common law, except in controversies between them. The rationale for the rule is found in Strauss v. Hutson, 104 Miss. 637, 61 So. 594 (1913) where the Court, speaking through Justice Cook, said:
The policy of the law, which renders either of them [husband and wife] incompetent to testify against the other, is discussed in Byrd v. State, 57 Miss. 243, 34 Am.Rep. 440. George, C.J., in that case quotes with approval Greenleaf on Evidence, as follows: "It is essential to the happiness of social life, that the confidence subsisting between the husband and wife should be sacredly protected and cherished in its most unlimited extent; and to break down or impair the great principles which protect the sanctities of that relation would be to destroy the best solace of human existence." (104 Miss. at 642, 643, 61 So. at 595).
As early as 1885, in Johnson v. State, 63 Miss. 313, 316, 317 (1885), Justice Arnold, speaking for the Court, said:
Under our statute it was the privilege of appellant to introduce his wife as a witness or not, as he might determine. He was not required by law to introduce her as a witness, and the State could not have done so. The statute does not contemplate or countenance such result as that husband and wife shall, directly or indirectly, be coerced by others into the witness-box. The sanctities of the marital relation cannot be exposed to public scrutiny, in a case like the one before us, without the consent of the husband and wife. If, for any reason, they decline to testify for each other, their decision is final and their motives should not be questioned.
If the failure of the husband to call his wife as a witness in his behalf is to be construed as testimony, or as a circumstance against him, his privilege and option in the matter would be annulled, and he would be compelled, in all cases, to introduce her, or run the hazard of being convicted on a constrained, implied confession or admission, or to make explanations for not introducing her which might involve the sacred privacy of domestic life.
In Turnage v. State, 216 Miss. 813, 63 So.2d 220 (1953), this Court held that the prosecuting attorney committed reversible error by commenting upon the failure of the defendant's wife to testify.
*444 The general rule that an unfavorable inference may be indulged against a party who fails to produce material and necessary testimony which is within his power to control does not apply in a case such as the one now before us.
The next question is whether the comment was so prejudicial under the facts of this case as to require a reversal. We feel that it was. The evidence as to who was at fault in the altercation and whether appellant was acting in self-defense was in sharp conflict and would have supported a verdict for either party. Under these circumstances, the remark of appellee's attorney that the plaintiff had produced every witness available to him and that defendant had failed to produce his own wife as a witness in his behalf became critical. The effect of counsel's statement was that if the wife had been called to testify, her testimony would have been unfavorable to her husband and would have supported the version of the incident as related by the appellee. We are, therefore, of the opinion that the remark, under these circumstances, was so prejudicial as to demand a reversal.
Since this case must be retried, we would point out that the part of Instruction Number 12 dealing with punitive damages is unclear and confusing and should be redrafted; also, the same instruction includes a reference to permanent injuries and future medical bills which is unsupported by the evidence.
We have considered the remaining assignments of error and find them to be without merit.
For the reasons stated above, this cause is reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.